In re **PETRO–SERVE LIMITED** and **Magnolia Development Corporation.**

**H.S. STANLEY, Jr., Trustee, Plaintiff,**

v.

**L. Kenneth KROGSTAD and Krogstad & Wood, Defendants.**

**Bankruptcy Nos. 8807888SEG, 8807892SEG.**
**Adv. No. 880999SC.**

United States Bankruptcy Court, S.D. Mississippi, S.D.

March 10, 1989.

limited to, the $32,501.59 approved as an interim fee on June 24, 1988.

Krogstad and Wood, Gulfport, Miss., for plaintiff.

William S. Boyd, III, Hollis C. Thompson, Jr., Gulfport, Miss., for defendants.

## MEMORANDUM OPINION

EDWARD R. GAINES, Bankruptcy Judge.

This cause is before the Court upon an application for interim compensation and reimbursement of expenses filed by the law firm of Krogstad and Wood, attorneys for the former debtors in possession, and upon an adversary complaint filed by the trustee against L. Kenneth Krogstad and the law firm of Krogstad and Wood for turnover of personal property of the estate. The interim application requests compensation for services by the law firm and for reimbursement of expenses from May 25, 1988 to August 12, 1988 in the total amount of $72,893.87 (later reduced by stipulation to $66,105.12). An order of conversion from Chapter 11 to Chapter 7 was entered on motion of the debtors on August 1, 1988.

The adversary proceeding is now moot by virtue of a subsequent assignment of the personal property by L. Kenneth Krogstad to the trustee. Therefore, that issue needs no ruling by this Court.

Having considered the pleadings, the testimony presented in open Court, the post-hearing memoranda submitted by the parties and applicable case law, the Court is of the opinion that the application for interim compensation should be, and the same is hereby denied for reasons set out hereinafter.

In addition, the Court is of the opinion that all previous fees and expenses awarded to Krogstad and Wood in these bankruptcy proceedings should be repaid to the trustee within 90 days from the date hereof. This repayment includes, but is not

## I. BACKGROUND

The present cases were initiated by voluntary petitions filed on April 28, 1988, and April 29, 1988, seeking relief under Chapter 11 of the Bankruptcy Code.[1] The debtors remained in possession and were represented, according to the order authorizing the retention of counsel, by the law firm of Krogstad and Wood, of Gulfport, Mississippi, until the matters were voluntarily converted to proceedings under Chapter 7 only 96 days later. Upon conversion, H.S. Stanley, Jr., an experienced panel trustee, was appointed to serve as trustee.

Petro–Serve Limited and Magnolia Development Corporation are Mississippi corporations allegedly engaged in the exploration and production of oil and gas. Their producing wells are located primarily in Texas and Oklahoma. The Petro–Serve bankruptcy proceeding, along with related filings which were consolidated for administrative purposes on October 27, 1988, is one of the largest volume cases ever to have been filed in this Court. Creditors and investors number more than 4,000. Their losses exceed 100 million dollars. They are located throughout the United States. The order of consolidation listing the names of the now 24 consolidated cases, including voluntary and involuntary petitions, is attached as Appendix "A".

In addition to the large volume of these cases, far-reaching criminal ramifications have evolved and great public interest has been generated as a result thereof. Principals in the debtor corporations, Jerry Lampley and Tom Ellzey, have entered guilty pleas in Mississippi to counts of securities fraud, mail fraud, and the sale of unregistered securities. Similar criminal charges are pending against Lampley, Ellzey, and others in Indiana, Illinois, and Missouri. In addition to the foregoing, the District Attorney for Harrison County, Hancock County, and Stone County, Mississippi, was indicted and recently entered a

---

**1.** Portions of this opinion are taken from the briefs submitted by counsel and filed of record.

guilty plea in U.S. District Court to charges of bankruptcy fraud in these cases.

The above criminal charges resulted from a joint investigation by the Federal Securities and Exchange Commission, the U.S. Postal Inspector, the Mississippi Secretary of State's Securities Division, the U.S. Attorney, the Mississippi Attorney General, and the Leviticus Project Association, a project funded by 20 states for multi-state criminal activity in coal, oil and gas fraud.

Both Jerry Lampley and Tom Ellzey have filed individual bankruptcy proceedings with Krogstad and Wood, and a partner in the firm, Lynne G. Krogstad, as counsel of record. R. Christopher Wood, a partner in the firm of Krogstad and Wood, served as personal legal counsel for Jerry Lampley and Tom Ellzey as well as corporate counsel for the debtors, Petro–Serve Limited and Magnolia Development Corporation. At the time these proceedings were filed, Gray Burdick of the law firm of Krogstad and Wood represented Lampley and Ellzey on the criminal matters surrounding these cases.

Prior to the initiation of the present proceedings, Jerry W. Lampley, Thomas Ellzey, Petro–Serve, Ltd. and Magnolia Development Corporation executed an assignment conveying to L. Kenneth Krogstad, a partner in the law firm of Krogstad and Wood, approximately $100,000 worth of furniture, fixtures, appliances and computer equipment. These assignments were represented to the Court as being in the nature of a retainer. On August 9, 1988, the trustee initiated the aforesaid adversary proceeding against L. Kenneth Krogstad and the law firm of Krogstad and Wood pursuant to 11 U.S.C. § 328, 329, 330 and 542 for the turnover of the personal property. Subsequently, L. Kenneth Krogstad assigned the property to the trustee.

On August 15, 1988, the present application for fees and expenses was filed by the firm of Krogstad and Wood requesting compensation in the amount of $66,788.75 and the reimbursement of $6,105.12 for expenses for a total of $72,893.87. This total was later reduced by stipulation to $66,105.12. The law firm had been previously awarded the sum of $32,501.59 by order of this Court dated June 24, 1988. This award predated discovery by the trustee and this Court that R. Christopher Wood was not a "disinterested person". On September 6, 1988, the trustee filed an objection to the aforesaid fee application raising among other matters that compensation should be denied since counsel did not qualify as a "disinterested person" as required by 11 U.S.C. § 327(a).

The above matters were set for hearing on October 14, 1988. On that date the Court was presented with a *stipulation* that was signed by the trustee, the attorneys for the trustee, and by each fee applicant whose time was billed on the application by Krogstad and Wood for interim compensation and reimbursement of expenses. The stipulation is attached hereto as Appendix "B". It is important to note paragraph III of the stipulation which states: "[T]he parties are in agreement that R. Christopher Wood is not a 'disinterested person' as said term is used in 11 U.S.C. § 327(a)...." The interim fee application listed 19 hours of time by R. Christopher Wood at $100.00 per hour.

In an attempt to circumvent the problems raised by R. Christopher Wood's not being a "disinterested person", testimony was given at the hearing by members of the firm, including R. Christopher Wood and Lynne G. Krogstad, that each of the attorneys seeking compensation and reimbursement from this Court considered themselves to be sole practitioners and not partners or members of a firm. It is important to note that there was no disclosure of this unique defense until the hearing and well after the trustee's attorneys had ferreted out the nondisinterested nature of R. Christopher Wood. In fact, the exact opposite representations were made to this Court in the Application of Debtor to Employ Attorneys (see Appendix "C"), the Affidavit of Proposed Attorneys (see Appendix "D"), the Order Authorizing Debtor–In–Possession to Employ Counsel (see Appendix "E"), the first Application for Interim Allowance for Compensation

and Reimbursement of Expenses (see Appendix "F"), and the second Application for Interim Allowance for Compensation and Reimbursement of Expenses dated August 15, 1988, which was the subject of this hearing, (see Appendix "G").

Not one of the documents filed with this Court ever disclosed or in any way intimated that the law firm of Krogstad and Wood was anything other than what it purported to be, a partnership. Judicial notice is taken of the fact that these attorneys have always presented themselves to this Court as a traditional law firm partnership and thousands of dollars in fees have been approved by this Court on the basis of those representations.

The proof at the hearing showed that there was a bank account set up as the Krogstad and Wood Administrative Account; their letterhead is in the name of "Krogstad and Wood Attorneys at Law"; the members of the firm each have business cards with the firm name of Krogstad and Wood embossed thereon; the members of the firm refer clients to other lawyers in the office for special areas of expertise; the members of the firm sign letters in the name of Krogstad and Wood; they use a unified billing system for everyone in the office; and their own application for professional liability insurance clearly states that L. Kenneth Krogstad, Lynne G. Krogstad, and R. Christopher Wood, are partners in the law firm of Krogstad and Wood. In addition, L. Kenneth Krogstad, Lynne G. Krogstad, and R. Christopher Wood, have listed themselves in the 1988 edition of Martindale–Hubble Law Directory as partners in the law firm of Krogstad and Wood, although they denied this at the hearing (See transcript of record at 56).

Based on the foregoing, there is no question in this Court's mind that Krogstad and Wood is a law partnership; that R. Christopher Wood is a partner in that law partnership; and that by stipulation, R. Christopher Wood was not and is not a "disinterested person" as required by 11 U.S.C. § 327(a). It is an affront to this Court's intelligence and integrity to suggest otherwise. In order for this Court to believe the testimony of the applicants that they were sole proprietors and not partners in a law firm, it would necessitate the finding by this Court that these "sole proprietors" had filed fraudulent applications for employment and fees over the past years for thousands of dollars in fees which should not have been approved by this Court.

In addition to the foregoing, Krogstad and Wood took the position at the hearing on these issues that their fees could be approved even if they were disqualified under 11 U.S.C. § 327(a) by virtue of the broad equity powers vested in the bankruptcy court.

With the foregoing in mind, let us now turn to the issues and law involved in this matter.

## II. ISSUES AND LAW

Two issues are presented to the Court for determination:

1) whether the fee applicants are disinterested persons as required under 11 U.S.C. § 327(a); and

2) whether the applicants' fees may be approved even if they are not disinterested persons as required by 11 U.S.C. § 327(a).

### A.

The Bankruptcy Code and Rules include provisions requiring disinterestedness on the part of professionals employed by the estate and requiring disclosure of connections with the debtor and other parties. Section 327 of Title 11 of the United States Code provides, in part, with regard to employment of professional persons:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Furthermore, Section 328(c) provides:

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c). Under Section 101(13), definitions of a "disinterested person" include a person that—

(A) is not a creditor, or equity security holder, or an insider; ...

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

11 U.S.C. § 101(13)(A) and (E).

Bankruptcy Rule 2014 requires disclosure by professionals to be employed by the estate of connections with parties in interest.

(a) **Application for and Order of Employment.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

Bankruptcy Rule 2014(a).

Because the parties stipulated that R. Christopher Wood was not a disinterested person under Section 327(a), *it is not necessary for this Court to make a finding on that issue.* Nor is it necessary to determine to what degree was his involvement with the debtors that resulted in the admission that he was not disinterested.

This court is not inclined to measure a degree of disinterestedness or interestedness to see whether it is sufficient to qualify or disqualify. A lack of disinterestedness on the part of a professional, as defined in the Bankruptcy Code, 11 U.S.C. sec. 101(13), is, without any exception known to this court, a disqualifying fact. *Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951).

*In re Michigan General Corporation* 77 B.R. 97 (Bankr.N.D.Tex.1987) at 106.

The effect of the nondisinterested nature of Wood's involvement with the debtors in bankruptcy on the other fee applicants from Krogstad and Wood is a matter that must be decided by the Court. On the issue of disinterestedness of professionals employed by the debtor's estate, the Fifth Circuit has stated the following:

The Bankruptcy Code requires that an attorney who would be employed by the debtor's estate must be disinterested and may not hold or represent an interest adverse to the estate. 11 U.S.C. §§ 101(13), 327 (1984). A major treatise on bankruptcy states that the requirement of disinterestedness

appears broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impar-

tial attitude required by the Code.... Indirect or remote associations or affiliations, as well as direct, may engender conflicting loyalties. The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration....

*2 Collier on Bankruptcy* § 327.03 at 327–19, 20 (15th ed. 1985) (footnotes omitted).[6] To prevent conflicts, the Code provides several check points. Section 329 requires the applicant to file a statement of compensation paid or contracted for in connection with the case, and Rule 2016(b) requires that statement to be filed prior to the first date set for the first meeting of creditors. Section 328(c) provides that the court may deny compensation if the applicant becomes nondisinterested or represents or holds an adverse interest at any time during the case.

The Supreme Court has stated, "[w]here an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." *Woods v. City Nat'l Bank and Trust Co. of Chicago,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1940). *See In re Georgetown of Kettering, Ltd.,* 750 F.2d 536, 540 (6th Cir. 1984). This Circuit is sensitive to preventing conflicts of interest and requires a "painstaking analysis of the facts and precise application of precedent." *Brennan's v. Brennan's Restaurant, Inc.,* 590 F.2d 168, 173–74 (5th Cir.1979).

*In re Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986) at 1256. Additionally, footnote 6 of the opinion further states that:

The standards for the employment of professional persons are strict, for Congress has determined that strict standards are necessary in light of the unique nature of the bankruptcy process. *In re Crooper Co.,* 35 B.R. 625, 629 (Bankr.M.D.Ga.1983). "[P]rofessionals engaged in the conduct of a bankruptcy case should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration" *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 334 (E.D.Pa.1982) (quoting *1 Collier Bankruptcy Manual* § 101.13 (1981)).

*Id.* at 1256, n. 6. In the case of *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328 (E.D.Pa.1982), cited by the Fifth Circuit, it was noted that where an attorney was disqualified, *all members of the firm must be disqualified.*

In any event, all members of the A & L firm must be disqualified from serving as counsel to the trustee. Since Lashner is required to withdraw from employment as counsel to the trustee, "no partner, or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment." Annotated Code of Professional Responsibility, DR 5–105(D), at pp. 246–51 (1979); *Id.,* Canon 9 at pp. 407–09; February 10, 1972 Resolution of the Judicial Council for the Third Circuit (discussed in *In re Imperial "400" National, Inc.,* 481 F.2d 41 (3rd Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 71, 38 L.Ed.2d 125 (1973); *Realco Services, Inc. v. Holt,* 479 F.Supp. 867, 871 (E.D.Pa.1979); *American Dredging Co. v. City of Philadelphia,* 480 Pa. 177, 184, 389 A.2d 568, 572 (1978)).

*Id.* at 338, n. 11.

■ It is not necessary to make a determination that Krogstad and Wood was a partnership for this Court to find that each person affiliated with the group had a sufficient relationship with others to require disqualification of the entire group because one of them was nondisinterested.

From the testimony, pleadings, the applicable law, and admonitions by the Fifth Circuit, this Court finds that the affiliation of an attorney (R. Christopher Wood) with Krogstad and Wood whose interests with the debtors herein make him a nondisinterested person under section 101(13), created a relationship with others affiliated at Krogstad and Wood that requires disquali-

fication of the entire group from representation of the debtors in these bankruptcy proceedings.

If Krogstad and Wood was not really a law partnership, in spite of the fact that it publicly presented itself as such, a serious violation of Rules 7.1 and 7.5 of the Mississippi Rules of Professional Conduct has been committed and this Court respectfully requests that the Ethics Committee of the Mississippi State Bar Association consider this matter for appropriate action.

### B.

The applicants further argue that even if the Court finds that they are not disinterested, payment may nevertheless be allowed in the discretion of the Court. Various cases were cited in the brief submitted by the applicants in support of their contention. Points from some of the cases cited include the following.

In *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436 (E.D.N.C.1984), it was stated that:

> The general rule should be that all fees are denied when a conflict is present but the Court should have the ability to deviate from that rule in those cases where the need for attorney discipline is outweighed by the equities of the case. This flexibility is supported by 11 U.S.C. § 328(c), which says that the court "may" (rather than "shall") deny compensation when counsel represents an interest adverse to the interest of the estate.

*Id.* at 440. Collier was cited to include the following:

> The denial of compensation [under 11 U.S.C. Section 328(c)] and reimbursement of expenses after services have been performed may be draconian and inherently unfair. In the absence of actual injury or prejudice to the debtor's estate, this sanction should not be rigidly applied. *2 Collier on Bankruptcy,* Section 328.04 at 328–16.

A portion of *In re Heatron, Inc.,* 5 B.R. 703 (W.D.Mo.1980), was cited that including the following

It is clear that the services of an attorney are necessary in the preparation of a plan under Chapter 11. It is clear also that the attorney who has represented the debtor in the past and who has filed the petition, absent some extraordinary circumstance is the one most familiar with debtor's problems and capabilities and the one who can most efficiently and economically assist in proceedings under the Chapter ... The interest does not offset the value afforded by the attorney's experience and familiarity with the affairs of the debtor.

*Id.* at 704–05.

Other cases cited by the applicants included *In re Flanigan's Enterprises, Inc.,* 70 B.R. 248 (S.D.Fla.1987), in which the Court quoted:

> Bankruptcy is rich in the potential for conflict because of the multiplicity of parties, and because their interests are so diverse. The other involves the manner of conducting the case. Bankruptcy involves shifting relationships: today's enemy is tomorrow's friend, and vice versa. Thus bankruptcy is rich in the potential for conflict, but it is also rich in the potential for cooperation. The parties need to work together even when they are at swords' points. This fact makes it extra difficult to identify just when a conflict exists.

*Id.* at 250 (Citing from Ayer, *How to Think About Bankruptcy Ethics,* 60 Am.Bankr. L.J. 355). This Court further stated the following:

> The Court further considered the recommendations of Professor and former Bankruptcy Judge John D. Ayer in his articles, "How to Think About Bankruptcy Ethics," *60 Am.Bankr.L.J.* 355. In summarizing the article, the Professor asks:
> 1. Does it pass the smell test?
> 2. Is it fair?

> There is no evidence that establishes or tends to prove either impropriety or wrongdoing or disadvantage or prejudice to any party. In fact, the evidence establishes the opposite. The facts pass the smell test. They pass the fairness test.

*Id.* at 254. Applicants also point out the case of *In D.L. Enterprises, Inc.,* 89 B.R. 107 (C.D.Cal.1988) where the Court penalized a law firm $5,000 for failure to comply with the disclosure requirements of Rule 2014 and deducted sums from a fee application but did not deny all fees or disqualify counsel under the specific facts of that case. Also cited was *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir.1986), in which the Fifth Circuit stated that:

> The bankruptcy court's decision to allow such fees notwithstanding an apparent conflict of interest is not an abuse of discretion, especially when one remembers the broad equity powers vested in the bankruptcy court. See, e.g. *In re New York, New Haven and Hartford Railroad Company,* 567 F.2d 166 (2nd Cir.1977), *cert. den.* 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977); and *In re Watson Seafood and Poultry Co., Inc.* 40 B.R. 436 (Bankr.E.D.N.C.1984).

*Id.* at 1059. An additional case cited by the applicants was in *In re Pacific Express, Inc.,* 56 B.R. 859 (E.D.Ca.1985) in which the Court stated the following:

> This court believes that where the professional, without concealment, applies for appointment in good faith believing that it is disinterested and without conflict of interest, the Court should not impose a denial of allowances and expense reimbursement on that basis alone, when after discovered facts reveal an interested person status or a conflict of interest with the debtor.

*Id.* at 861.

Taking these citations into consideration, the court finds that under the specific facts of this case, the equities weigh in favor of the investors and creditors of these estates, and not with these attorneys who are not disinterested, who failed to disclose their relationship with the debtors as required under the Bankruptcy Code and Rules, and who violated the Rules of Professional Conduct of the Mississippi State Bar Association. The applicants knew that Wood had represented the debtor entities prior to the filing of these bankruptcy proceedings, and in fact, gained employment for representation in these bankruptcy proceedings through their relationship with Wood.

In the face of the specific requirement of disclosure of connections with the debtor in Rule 2014, the employment application filed with this Court represented that the firm had *no* connections with any parties in interest and their affidavit stated unequivocally that they did not represent any interest adverse to that of the debtor or the creditors. These statements were simply not true and in this Court's opinion constituted perjurious statements. It is impossible for this Court to believe that the failure to disclose the truth was due to ignorance or mere oversight by these attorneys. Lynne G. Krogstad served as law clerk to this bankruptcy court. The firm's representation in various bankruptcy proceedings over the years has been extensive. They are not strangers to the Bankruptcy Code or Rules.

Applicants make the point in their brief that none of the work done by Wood for the debtors or their principals occurred on the premises of the Krogstad and Wood law office. However, section 101(13) supplies the definition of a disinterested person without reference to the location of the work site. A changing location does not remove the conflict of the nondisinterested person as he moves from workplace to workplace.

This Court, as is the Fifth Circuit, is sensitive to conflicts and to ethical standards that should be upheld by members of the bar. As pointed out by the applicants, bankruptcy is a fertile field for conflicts of interest. Because a field of practice is rich for conflict is no justification for allowing continuation of representation in the face of conflict. This is particularly true under circumstances where the conflict was known or should have been known prior to application for employment, and as here where there was no disclosure to the Court prior to consideration of entry of an order allowing employment.

On the issue of disclosure and disqualification, the Court points out the following

comments by Judge Abramson in the Northern District of Texas:

In these proceedings Akin, Gump, by purportedly representing the several bankruptcy estates when in fact it was representing creditors, equity holders, and was not disinterested, placed itself by artifice and lack of disclosure in the central position of the bankruptcy process and thereby gained an access to unfair and unjust advantage over other parties in interest. The possibility of extreme prejudice to other interests is vividly dramatized by the very prompt applications for post-petition secured credit cross-collateralized between the estates, the sale of substantially all the assets of Krestmar, and the pending applications for substantive consolidation of the estates. Only the most diligent of parties in interest could have acted quickly enough to protect themselves if their interests differed.

The court has no hesitation in ordering Akin, Gump to cease its representation of these estates. The requirements of the Bankruptcy Code and Rules set higher standards than Akin, Gump has shown itself inclined to meet. Akin, Gump will be relieved of its duties as soon as qualified counsel can be retained and given sufficient background information.

There has not been an application for interim compensation in these cases by Akin, Gump. There is no need for such because, based on the failure to qualify under Section 327 and the failure to disclose, the court now denies all compensation and, additionally, reimbursement of all out-of-pocket expenses that are not shown to have been of benefit to the estates. 11 U.S.C. sec. 328(c); *Woods v. City National Bank and Trust Co. of Chicago*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1940); *In re Georgetown of Kettering, Ltd.*, 750 F.2d 536 (6th Cir. 1984); *In re Rogers–Pyatt Shellac Co.*, 51 F.2d 988 (2d Cir.1931); *In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842 (Bankr.W.D.Ky.1983). Akin Gump is required to place all funds, whether in the form of a retainer, reimbursement, or compensation, it received in regard to this case, regardless of the source, with the clerk of the court where the funds will be held at interest pending further order of the court.

*In re Michigan General Corporation,* 77 B.R. 97 (Bankr.N.D.Tex.1987) at 106. Additionally, on the issues of conflict and disclosure the following is noted from the Court in *In re Glenn Electric Sales Corporation,* 89 B.R. 410 (Bankr.N.J.1988):

Once the facts are known however, the potential for conflict is clear. Even if the conflict never materializes there is the appearance of a conflict of interest. Although I am not able to cite the author, there is a saying to the effect that if it walks like a duck and talks like a duck then, in all likelihood, it's a duck.

In summary therefore, it is the holding of the Court that the retention of the Kleinberg firm must be terminated for the following reasons:

a. The application for the appointment of the Kleinberg firm as counsel for the debtors did not comply with Bankruptcy Rule 2014.

b. In this case the Kleinberg firm failed to fulfill its duty of disclosure. The Court, the United States Trustee, parties in the case and the public should not be required to review and reconcile several pleadings in a case to determine the nature of and facts relating to the retention of a professional.

c. The fact that a potential proponent of a plan, affiliated with the largest creditor of the debtor, provided the funds to sole stockholder of the debtor that were needed and used to retain a professional to represent the debtor creates (i) the potential for a conflict of interest and (ii) gives rise to the appearance of a conflict of interest.

d. It looks like a duck.

*Id.* at 418.

Aside from the issue of conflict, the benefit of services to these estates and the amount of fees charged are subject to review by the Court. The position of the applicants as to why a Chapter 11 was filed was, according to their brief, to notify all creditors including investors of the pro-

ceeding and to prepare schedules. The sole other reason for a Chapter 11 proceeding was to file an adversary complaint against Alford Oil Company to recover wrongfully withheld revenue from and oil and gas wells. (Brief of applicants at pp. 1, 2).

The adversary was filed immediately after the bankruptcy petition. Within three months, the Chapter 11 proceeding was converted to a Chapter 7, with the lawsuit being inherited by the Chapter 7 panel trustee on the *debtors' own motion*, but only after generation of over $100,000.00 in fees to the applicants' law firm.

The reasons stated by the applicants for filing this proceeding as a Chapter 11 appear to have no merit to this Court. First, there is no need to notify creditors unless a proceeding is filed. To state that a filing is necessary in order to notify creditors of something is not a valid reason for filing a Chapter 11. A simple letter can notify a creditor. Secondly, the adversary proceeding could have been filed in a Chapter 7 or in a non-bankruptcy Court without the expense of additional fees and costs required for a Chapter 11 filing.

It is apparent to this Court from the file and the record that no Chapter 11 reorganization was ever intended.

Additionally, section 331 provides that interim compensation may be applied for not more than once every 120 days unless the Court permits otherwise. The current fee application was presented within 90 days of the previous application upon which approval was obtained for the sum of $32,-501.29 for fees and expenses.

Having carefully considered these issues, this Court finds the fees requested by Krogstad and Wood should be denied. Specific code authority to deny fees where a conflict exists is given under section 328(c). *See also In re Kendavis Industries International Inc.*, 91 B.R. 742 (Bankr.N.D.Tex.1988). *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228 (Bankr.E. D.Cal.1988). Denial of fees in the face of conflict is within the discretion of the Court. *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir.1986).

The Court finds that the equities weigh in favor of denying compensation and disciplining the attorneys. There was a complete failure to disclose connections with the debtors that made the law firm *not disinterested* under section 101(13). Had such disclosure been made at the time of the application for employment, the conflict would have prevented approval of employment. This Court will not now allow such approval after the fact on the argument that a denial of fees after services are rendered is too "draconian". When dealing with attorneys who obviously follow Machiavelli's principle that the "end justifies the means", or to paraphrase: "the fee justifies the conduct", a draconian response is justified.

Assuming arguendo that this Court believed the applicants' testimony that they were sole practitioners, and that, therefore, R. Christopher Wood's relationship to the debtors posed no problem for the approval of the fees, the fees must still be denied by this Court. The order authorizing employment would thus have approved employment of a non-existent entity referred to as "Krogstad and Wood". To believe the testimony as to sole proprietorship is to reject the Krogstad and Wood entity approved by this Court on May 16, 1988.

In the case of *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983), the Fifth Circuit, in a detailed analysis, discussed courts that have allowed or disallowed nunc pro tunc orders of employment and concluded with the following:

> In so holding, we decide only the narrow issue that a bankruptcy judge *does* have this discretion, rejecting the present trier's determination that as a matter of law he could never exercise such discretionary power. We do not intend to intimate whether, on remand, he should or should not exercise that discretion. Further, the bankruptcy statute and rules require court approval for employment of an attorney for the debtor's estate and contemplate that such approval will be required in advance of such employment and only after the showing now required by statute ... While equitable powers may permit nunc pro tunc appointment in

rare or exceptional circumstances, we do not intend by our holding to encourage any general nonobservance of the contemplated preemployment court approval. We only hold that, where through oversight the attorney has neglected to obtain such prior approval but has continued to perform services for the debtor/debtor in possession (many of them as here under the eye of the court itself), the bankruptcy court retains equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval nunc pro tunc, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefited the debtor's estate and, consequently, its creditors.

*Id.* at 1289. The failure of Krogstad and Wood to obtain a proper order of employment was not an oversight, but was the result of improper conduct by the applicant law firm that was an obvious violation of the Mississippi Rules of Professional Conduct. The Court finds no exceptional circumstance to grant nunc pro tunc approval of this employment.

## III. CONCLUSIONS

Krogstad and Wood applied to this Court for employment as a law firm. It has presented itself as a law firm to the general public and to this Court for years. Upon being confronted by the trustee's attorneys that R. Christopher Wood was not a disinterested person, Krogstad and Wood immediately changed their position from being a partnership to sole proprietors operating under the same roof but advertising as a law firm. This creates a serious problem for Krogstad and Wood. If there is no such law firm as Krogstad and Wood, then nobody was employed in this case to represent the debtors.

The problem with the group being sole proprietors is that these "sole proprietors" were affiliated in such a fashion as to disqualify all of them from representing the debtors.

Krogstad and Wood suggest that if the Court fails to accept their incredible transsubstantiation from partnership to sole proprietorships, the fee would still be justified on the basis of benefit to the estate by services rendered by Krogstad and Wood.

All of these arguments fail.

This Chapter 11 obviously never should have been filed. It should have been a Chapter 7 from its inception, if in bankruptcy at all. Krogstad and Wood admitted that they filed the Chapter 11 for very limited purposes and had no intentions of ever filing a Chapter 11 reorganization plan. For Krogstad and Wood to state that one of their reasons for filing the Chapter 11 was to give notice to creditors is incomprehensible as to logic or reason. If you wish to give notice to someone, all you have to do is send them a letter properly posted. There is no need to file bankruptcy to notify someone of a fact or event.

The other reason given for filing a Chapter 11 was to initiate an adversary proceeding against Alford Oil. Alford Oil could have been sued in a non-bankruptcy court or could have been filed by the very same Chapter 7 trustee who is in charge of these proceedings at this time. There was absolutely no reason for the Krogstad and Wood firm to be involved in the suit against Alford Oil in this bankruptcy forum.

All that was done for the estates of these debtors was to generate a legal bill of over $100,000 for Krogstad and Wood, who converted their own clients to a Chapter 7 proceeding within 96 days of the filing of the Chapter 11. Under the circumstances in this case, fees of this magnitude cannot be justified on the basis of benefit to the estate.

Due to the alleged nonexistence of the law firm of Krogstad and Wood, or the alleged existence of sole proprietorships so affiliated that they violate the bankruptcy law, and in the absence of justification of the fees on the basis of benefit to the estate, there is simply no way that these

fees can be paid to these applicants, whatever they call themselves.

In this Court's opinion, the main benefit and the motive for filing the Chapter 11 was to keep the entire estates and matters appertaining thereto in the hands and under the control of the alleged, indicted, and confessed criminal principals, and their attorneys, including the files, computer information, and other important documents under their control.

The rendition of this opinion is a very painful and depressing task for this Court. The conduct of the attorneys which forces this Court to render this opinion is disgraceful, unethical, and unpardonable. It is an especially dark day for those countless attorneys who honor their oath to uphold the ethics of the legal profession and thereby often forego the opportunity to pursue personal ambitions and wealth just to make money.

Considering the facts and circumstances involved in this case, the application for compensation does not pass the "smell" test and does not pass the fairness test. The damage to the investors involved in these estates, already suffering from the criminal securities fraud scheme perpetrated by the principals of the debtors, far outweighs the damage caused by the denial of fees to the applicants, particularly in light of their failure to disclose relationships with the debtors which would have prevented their representation herein from the beginning.

The Court finds that the current fee application should be denied in its entirety. Furthermore, all previous fees and expenses awarded to Krogstad and Wood in these bankruptcy proceedings should be repaid to the trustee within 90 days from the date hereof. This repayment includes, but is not limited to, the $32,501.59 interim fee approved on June 24, 1988.

A separate judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

ORDERED.

### APPENDIX A

In The United States Bankruptcy Court

For The Southern District of Mississippi

Southern Division

Filed Oct. 28, 1988

In Re: Petro–Serve Limited, Debtor

and

Magnolia Development Corporation, Debtor

In Re: Jerry W. Lampley, Debtor

In Re: Thomas Ellzey, Debtor

In Re: Steven Abdo, Debtor

In Re: Olympia Resources, Inc., Debtor

In Re: Lampley Oil Company, Inc., Debtor

In Re: New Horizons International, Inc., Debtor

In Re: Arc Petroleum Company, Debtor

In Re: Resource Management, Inc., Debtor

In Re: Source Management, Inc., Debtor

In Re: Gulf Coast Resources, Inc., Debtor

In Re: Gulf Coast Petroleum, Inc., Debtor

In Re: Enfield Resources, Inc., Debtor

In Re: Enfield Development, Inc., Debtor

In Re: Arrow Resources, Ltd., Debtor

In Re: Arrow Petroleum Corporation, Debtor

In Re: Santex Oil Corporation, Debtor

In Re: Drillco, Inc., Debtor

In Re: Apexx International, Inc., Debtor

In Re: Arrow Resources, Ltd. (of Delaware), Debtor

In Re: Resource Management Corporation, Debtor

In Re: The Producers Group, Inc., Debtor

In Re: The Production Group, Inc., Debtor

Nos. 88–07888 SEG Chapter 7, 88–07892 SEG Chapter 7, 88–07903 SEG Chapter 7, 88–08168 SEG Chapter 7, 88–08004 SEG Chapter 7, 88–07962 SEG Chapter 7, 88–08565 SEG Chapter 7, 88–08975 SEG Chapter 7, 88–08974 SEG Chapter 7, 88–08973 SEG Chapter 7, 88–08972 SEG Chapter 7, 88–08971 SEG Chapter 7, 88–08970 SEG Chapter 7, 88–08969 SEG Chapter 7, 88–08968 SEG Chapter 7, 88–08967 SEG Chapter 7, 88–08966 SEG Chapter 7, 88–08965 SEG Chapter 7, 88–08964 SEG Chapter 7, 88–08963 SEG Chapter 7, 88–08962 SEG Chapter 7, 88–08961 SEG Chapter 7, 88–08960 SEG Chapter 7, 88–08959 SEG Chapter 7

## ORDER CONSOLIDATING CASES FOR ADMINISTRATIVE PURPOSES

THIS DAY THIS CAUSE came on to be heard on motion of the Trustee to consolidate the above-styled and numbered matters for administrative purposes; and the Court, being advised in the premises, is of the opinion that consolidation for administrative purposes would be in the best interests of each of the estates.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the above-styled and numbered matters are hereby administratively consolidated and shall be referred to simply as In Re Petro–Serve, Ltd., Bankruptcy Docket No. 88–07888 SEG.

SO ORDERED AND ADJUDGED this 27th day of October, 1988.

/s/ Edward R. Gaines
UNITED STATES BANKRUPTCY JUDGE

APPENDIX B

In The United States Bankruptcy Court For The Southern District of Mississippi Southern Division

In Re Petro–Serve Limited Debtor

and Magnolia Development Corp. Debtor

H.S. Stanley Jr., Trustee Plaintiff

Versus

L. Kenneth Krogstad and Krogstad & Wood Defendants

No. 88–07888 SEG

Chapter 7

Consolidated

No. 88–07892 SEG

Chapter 7

Adversary No.

88–0999 SC

## STIPULATION

It is hereby stipulated by and between the parties that with respect to the objection to payment of attorneys fees filed on behalf of the Trustee in this matter, the parties hereto stipulate as to the following issues:

### I.

The fees applied for by Kenneth Krogstad, Lynne G. Krogstad, Stephen B. Simpson, James C. Simpson, C. Gray Burdick and Beverly Holder were incurred in the above cases at such time as the Debtors were proceeding under Chapter 11, and the present Motion for attorneys fees and expenses was filed after the bankruptcies were voluntarily converted to proceedings under Chapter 7, with no order previously entered relative to said fees. Of the fees requested, a total sum of $37,582.50 were incurred in conjunction with the adversary proceeding against Alford Oil Corporation, and a total sum of $29,206.25 were incurred in administrative matters. Likewise, $4,596.86 in expenses were incurred in conjunction with the adversary proceeding and $1,508.26 were incurred in administrative

matters. (The parties have agreed to a compromise as set forth in Paragraph VI.)

### II.

That all questions of reasonableness of fees and expenses as benefiting the estate have been resolved by the parties, and that such fees and expenses were of benefit to the estate, and such objection as to reasonableness of payment of fees and expenses filed by the Trustee on or about the 6th day of September, 1988 is hereby withdrawn. However, the "disinterested person" question as raised in the pleading of the Trustee is a matter for determination of the Bankruptcy Court in open hearing.

### III.

That the parties are in agreement that R. Christopher Wood is not a "disinterested person" as said term is used on 11 USC Section 327(a), and his application for fees have been withdrawn.

### IV.

That on or about April 25, 1988, L. Kenneth Krogstad received assignments of certain personal property of the Debtors as a general retainer for services in the Bankruptcy Court.

### V.

That upon resolution of this matter, it is agreed that L. Kenneth Krogstad is to execute a reassignment of said personalty and deliver same reassignment to the Trustee, upon which Adversary No. 88–0999SC shall be dismissed with prejudice by the Bankruptcy Court.

### VI.

That by virtue of this Stipulation, the parties have agreed to a compromise as to the amount of fees to be awarded pursuant to the aforesaid application, the sum of sixty thousand dollars ($60,000.00) for attorneys fees and $6,105.12 for costs, to be paid in accordance with the Bankruptcy Code and bankruptcy authorities as subordinate administrative expenses upon conversion of Chapter 11 to a Chapter 7, simultaneously, but immediately after expenses and fees applied for by the trustee.

### VII.

All parties agree that the following issue shall be tried in open court on the 14th day of October, 1988 for a determination by the Bankruptcy Court:

1. Do L. Kenneth Krogstad, Lynne G. Krogstad, Stephen B. Simpson, James C. Simpson, C. Gray Burdick and Beverly Holder fail to qualify as "disinterested persons" holding no material interest adverse to the estate pursuant to the meaning of 11 U.S.C. Section 327?

2. In the event the Court finds Kenneth Krogstad, Lynne G. Krogstad, Stephen B. Simpson, James C. Simpson, C. Gray Burdick and Beverly Holder are not "disinterested persons", are they disqualified from receipt of payment for such services as described above?

Said Stipulation entered into on this the 14 day of October, 1988, which is to be offered by joint motion of the Trustee with L. Kenneth Krogstad, Lynne G. Krogstad, Stephen B. Simpson, James C. Simpson, C. Gray Burdick and Beverly Holder.

/s/ <u>H.S. Stanley, Jr.</u>
H.S. STANLEY, JR., TRUSTEE

/s/ <u>Wm. S. Boyd, III</u>
WILLIAM S. BOYD, III,
CO–COUNSEL FOR TRUSTEE

/s/ <u>Hollis C. Thompson</u>
HOLLIS C. THOMPSON,
CO–COUNSEL FOR TRUSTEE

/s/ <u>L. Kenneth Krogstad</u>
L. KENNETH KROGSTAD

/s/ <u>Lynne G. Krogstad</u>
LYNNE G. KROGSTAD

/s/ <u>Stephen B. Simpson</u>
STEPHEN B. SIMPSON

/s/ <u>James C. Simpson, Jr.</u>
JAMES C. SIMPSON, JR.

/s/ <u>C. Gray Burdick</u>
C. GRAY BURDICK

/s/ <u>Beverly E. Holder</u>
BEVERLY HOLDER

/s/ R. Christopher Wood
R. CHRISTOPHER WOOD

APPENDIX C

In The United States Bankruptcy Court

For The Southern District of Mississippi

Southern Division

In Re: Petro Serve, Ltd.

May 6, 1988

No. 8807888SEG

Chapter 11

Reorganization

## APPLICATION OF DEBTOR TO EMPLOY ATTORNEYS

The application of Petro Serve, Ltd., respectfully represents:

1.

On the April 27, 1988, debtor filed a petition under Chapter 11 of the Bankruptcy Code.

2.

Your applicant has continued in possession of its property, and your applicant as debtor-in-possession is now operating its business and managing its property.

3.

Debtor, as debtor-in-possession, wishes to employ Lynne G. Krogstad and the law firm of Krogstad and Wood, duly admitted to practice in this court.

4.

Your applicant has selected Lynne G. Krogstad and the law firm of Krogstad and Wood, for the reason that they have considerable experience in matters of this nature, and believes that Lynne G. Krogstad and the law firm of Krogstad and Wood are well qualified to represent it as debtor-in-possession in this proceeding.

5.

The professional services for the said Lynne G. Krogstad and the law firm of Krogstad and Wood to render are:

A) to give Debtor legal advice with respect to its powers and duties as debtor-in-possession in the continued operation of its business and management of its property;

B) to prepare on behalf of your applicant the necessary applications, answers, orders, reports and other legal papers;

C) to perform all other legal services for the Debtor as debtor-in-possession which may be necessary herein; and

D) to apply for authority to and to obtain secured credit for the benefit of debtor-in-possession;

and it is necessary for the Debtor as debtor-in-possession to employ and attorney for such professional services.

6.

To the bet of Debtor's knowledge and belief, said Lynne G. Krogstad and the law firm of Krogstad and Wood have no connection with the creditors, or any other party in interest, or their respective attorneys.

7.

Your applicant desires to employ Lynne G. Krogstad and the law firm of Krogstad and Wood under a general retainer because of the extensive legal services required.

8.

Lynne G. Krogstad and the law firm of Krogstad and Wood represent no interest adverse to debtor as debtor-in-possession or the estate in the matters upon which they are to be engaged for debtor as debtor-in-possession, and their employment would be to the best interests of this estate.

WHEREFORE, your applicant prays that it be authorized to employ and appoint the said Lynne G. Krogstad and the law firm of Krogstad and Wood under a general retainer to represent it in this proceeding under Chapter 11 of the said Code, and to pay up to 125 per hour plus expenses for legal service and that it have such other and further relief as is just.

PETRO SERVE, LTD.

By: (s) Tom C. Ellzey
President

APPENDIX D

In The United States Bankruptcy Court

For The Southern District of Mississippi

Southern Division

In Re: Petro Serve, Ltd.

May 6, 1988

No. 8807888SEG

Chapter 11

Reorganization

AFFIDAVIT OF PROPOSED ATTORNEYS

STATE OF MISSISSIPPI

COUNTY OF HARRISON

The proposed attorneys, Krogstad and Wood, hereby make solemn oath:

1.

Krogstad and Wood are attorneys and counsellors at law, duly admitted to practice in the State of Mississippi.

2.

Krogstad and Wood maintains an office for the practice of law at 1313–25th Avenue, Gulfport, Mississippi 39502.

3.

Krogstad and Wood has been requested to serve as attorneys to Petro Serve, Ltd. Chapter 11 case and are willing to serve in that capacity.

4.

Krogstad and Wood does not represent any interest adverse to that of the debtor or the creditors herein in the matters upon which they are to be retained.

(s) Lynne G. Krogstad
LYNNE G. KROGSTAD for
Krogstad and Wood

SWORN TO AND SUSCRIBED BEFORE ME THIS *6th* DAY OF *May, 1988*

*[signature]*
NOTARY PUBLIC

My Commission Expires:

MY COMMISSION EXPIRES DEC. 10, 1988

APPENDIX E

In The United States Bankruptcy Court

For The Southern District of Mississippi

In the Matter of: Petro–Serve, Ltd.

May 16, 1988

Case No. 8807888SEG

ORDER AUTHORIZING DEBTOR–IN–POSSESSION TO EMPLOY COUNSEL

THIS CAUSE having come on for consideration of the Application of the Debtor–in–Possession to employ counsel, and the Court, having considered said application and otherwise being fully advised, is of the opinion that the application is well taken and should be approved.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the employment of _____ KROGSTAD & WOOD, Post Office Box 310, Gulfport, MS 39502 _____ as counsel for _____, Debtor–in–Possession, be and it is hereby approved.

IT IS FURTHER ORDERED AND ADJUDGED that said counsel shall, within ten (10) days of the entry hereof, file with the Court the reports required by 11 U.S.C. § 329 and Bankruptcy Rule 2016(b), if the said reports have not been filed.

IT IS FURTHER ORDERED AND ADJUDGED that said counsel shall be entitled to receive reasonable compensation and to receive reimbursement of actual, necessary expenses only after notice and a hearing as contemplated by 11 U.S.C. § 330, Bankruptcy Rule 2016 and any other applicable or related statutes and rules.

IT IS FURTHER ORDERED AND ADJUDGED that this order applies to any funds that might have been received by said counsel as a retainer or of a similar nature.

IT IS FURTHER ORDERED AND ADJUDGED that any application for compen-

872

sation and reimbursement for expenses shall set forth the date of entry of all previous orders allowing compensation and expenses and the amounts so allowed.

ORDERED AND ADJUDGED this the 16th day of May 1988.

(s) Edward R. Gaines

UNITED STATES BANKRUPTCY JUDGE

## APPENDIX F

In The United States Bankruptcy Court

For The Southern District of Mississippi

Southern Division

In Re: Petro–Serve, Ltd.

May 26, 1988

No. 8807888 SEG

APPLICATION FOR INTERIM ALLOW-
ANCE FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES

The application of Krogstad and Wood, attorneys for the Debtor in Possession, respectfully represents:

1. Applicant firm is counsel for the above-named Debtor and makes this application for interim allowance of compensation pursuant to 11 USC Section 331, for professional services rendered for reimbursement of expenses necessarily incurred by Applicant firm in the representation of said Debtor.

2. This case was commenced by the filing of a petition seeking reorganization pursuant to Chapter 11 of the Bankruptcy Code on 4–29, 1988. The Debtor has continued in possession of its property and in the management of its affairs.

3. Applicant firm has filed with the Court a statement disclosing compensation pursuant to Section 329(a)(q) of the Bankruptcy Code. Attached hereto and incorporated herein by reference is a statement of the funds and/or property received prior to the initiation of this case for services rendered immediately prior to and following the filing of the original petition herein and an accounting of any funds or property paid to the Applicant firm pursuant to Orders of this Court.

4. This is the first application for interim allowance of compensation for professional services and expenses to be filed by applicant firm in this case.

5. All professional services for which interim allowance of compensation is requested were performed by applicant firm for and on behalf of the Debtor and not on behalf of any committee, creditor or any other person. This application covers the allowance of compensation for professional services performed from 4–25–88 through 5–23–88.

6. During the period covered by this application the applicant firm expended a total of 234.75 hours for professional services rendered on behalf of the Debtor. The time was spent by attorneys and paralegals as follows:

| | |
|---|---|
| L. Kenneth Krogstad | 73.75 hours |
| Lynne G. Krogstad | 72.50 hours |
| James C. Simpson | 46.50 hours |
| R. Christopher Wood | 1.00 hours |
| Beverly Holder (paralegal) | 41.00 hours |
| | TOTAL: 234.75 hours |

7. A complete accounting of the foregoing time is provided in Exhibit "B" attached hereto and incorporated herein by reference. The rates charged by the firm are within the standard allowed by the Court and are detailed in Exhibit "B". The Court should consider the size of the case, the large number of creditors, the degree of responsibility, difficulty, complexity and results achieved. Accordingly based upon the rate of One Hundred Dollars ($100.00) per hour for attorneys L. Kenneth Krogstad, Lynne G. Krogstad, R. Christopher Wood and James C. Simpson, and Forty Dollars ($40.00) per hour for paralegal, Beverly Holder, the value of the professional services rendered during the period 4–25–88 through 5–23–88, 1988 by applicant firm totals $21,033.75.

8. Expenses which have not been reimbursed or previously applied for total $3,058.39 and are also detailed in Exhibit "B" attached hereto and incorporated herein by reference.

9. By this application, applicant firm requests the Court to authorize compensation

to be paid to applicant firm in the amount of $19,923.75 and to authorize payment of expenses in the amount of $3,058.39.

10. Applicant states to the Court that funds belonging to the Debtor are currently escrowed in Hancock Bank in Gulfport, Mississippi. By this application, applicant firm requests that the Court upon approval of the fees and expenses in question, issue an Order directing Hancock Bank in Gulfport, Mississippi to issue payment directly to the firm of Krogstad and Wood in such amounts as approved by the Court.

Respectfully submitted this the 25 day of May, 1988

KROGSTAD AND WOOD,
ATTORNEYS FOR DEBTOR
BY: (s) Lynne G. Krogstad
LYNNE G. KROGSTAD

### CERTIFICATE OF SERVICE

I, Lynne G. Krogstad, do hereby certify that I have mailed a Notice of this Application to all creditors on the master address list and to all known parties in interest. A copy of that notice is attached hereto as Exhibit "C"

This the 25th day of May, 1988.

(s) Lynne G. Krogstad
LYNNE G. KROGSTAD

### APPENDIX G

In The United States Bankruptcy Court

For The Southern District of Mississippi

Southern Division

In Re: Petro–Serve, Ltd. and Magnolia Development Corp.

Aug. 15, 1988

Consolidated No. 8807892SEG

### APPLICATION FOR INTERIM ALLOWANCE FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

The application of Krogstad and Wood, attorneys for the Debtor in Possession, respectfully represents:

1. Applicant firm is counsel for the above-named Debtors and makes this application for interim allowance of compensation pursuant to 11 USC Section 331, for professional services rendered for reimbursement of expenses necessarily incurred by Applicant firm in the representation of said Debtor.

2. These cases were commenced by the filing of a petition seeking reorganization pursuant to Chapter 11 of the Bankruptcy Code in April, 1988. The Debtors have converted their cases to Chapter 7. Further representation by applicant firm of the debtors is expected to be limited.

3. Applicant firm filed with the Court a statement disclosing compensation pursuant to Section 329(a)(q) of the Bankruptcy Code. L. Kenneth Krogstad of applicant firm took from both Debtors a transfer conveyance and/or assignment of certain items of personal property as a retainer and as an inducement to him to represent the Debtors before the Bankruptcy Court. Copies of the assignments are attached hereto as Exhibits "A" and "B". The items transferred are retained by said law firm pending the final disposition by this Honorable Court of all sums due and owing to them pursuant to the United States Bankruptcy Code. Said items are fully insured and secured in safe, air-conditioned locations. The Trustee, H.S. Stanley, has filed with the Court an action to require the personal items to be turned over to the Trustee. Applicant firm claims title and/or a security interest in said personalty.

4. On May 25, 1988, applicant made a first application for fees and expenses which was approved by Court Order of June 24, 1988. Applicant firm was paid $32,501.59 for the joint representation of the Debtors.

5. This is the second application for interim allowance of compensation for professional services and expenses to be filed by applicant firm in this case.

6. All professional services for which interim allowance of compensation is requested were performed by applicant firm for and on behalf of the Debtors and not on behalf of any committee, creditor or any

other person. This application covers the allowance of compensation for professional services performed from May 25, 1988 through August 12, 1988.

7. During the period covered by this application the applicant firm expended a total of 838.50 hours for professional services rendered on behalf of the Debtor. The time was spent by attorneys and paralegals and others as follows:

| | |
|---|---|
| L. Kenneth Krogstad | 172.50 hours |
| Lynne G. Krogstad | 163.50 hours |
| James C. Simpson | 214.75 hours |
| R. Christopher Wood | 19.00 hours |
| Paralegal | 190.75 hours |
| C. Gray Burdick | .50 hours |
| Stephen B. Simpson | 1.25 hours |
| Computer Operator | 67.50 hours |
| Miscellaneous | 8.75 hours |
| TOTAL: | 838.50 hours |

8. A complete accounting of the foregoing time is provided in Exhibit "C" attached hereto and incorporated herein by reference. The rates charged by the firm are within the standard allowed by the Court and are detailed in Exhibit "C". The Court should consider the size of the case, the large number of creditors, the degree of responsibility, difficulty, complexity and results achieved. Accordingly based upon the rate of One Hundred Dollars ($100.00) per hour for attorneys L. Kenneth Krogstad, Lynne G. Krogstad, R. Christopher Wood and James C. Simpson, and Forty Dollars ($40.00) per hour for paralegal, Beverly Holder, the value of the professional services rendered during the period May 25, 1988 through August 12, 1988 by applicant firm totals $66,788.75.

9. Expenses which have not been reimbursed or previously applied for total $6,105.12 and are also detailed in Exhibit "C" attached hereto and incorporated herein by reference.

10. By this application, applicant firm requests the Court to authorize compensation to be paid to applicant firm in the amount of $72,893.87 as payment for attorneys fees and expenses incurred.

11. Applicant states to the Court that funds belonging to the Debtor are currently escrowed in Hancock Bank in Gulfport, Mississippi. By this application, applicant firm requests that the Court upon approval of the fees and expenses in question, issue an Order directing Hancock Bank in Gulfport, Mississippi to issue payment directly to the firm of Krogstad and Wood in such amounts as approved by the Court. Upon receipt thereof, L. Kenneth Krogstad and applicant firm will relinquish all right, title and interest in the personalty that the undersigned currently has pursuant to the Assignments, Exhibits "A" and "B".

Respectfully submitted this the 15th day of August, 1988.

KROGSTAD AND WOOD,
ATTORNEYS FOR DEBTORS
BY: (s) Lynne G. Krogstad
LYNNE G. KROGSTAD

### CERTIFICATE OF SERVICE

I, Lynne G. Krogstad, do hereby certify that I have mailed a Notice of this Application to the parties listed below.

H.S. Stanley, Jr.

Hollis C. Thompson, Jr.

William Boyd, III

Securities & Exchange Commission

Internal Revenue Service

This the 15 day of August, 1988.

(s) Lynne G. Krogstad
LYNNE G. KROGSTAD