**In re FLANIGAN'S ENTERPRISES, INC. ID # 59–0877368, Debtor.**

**Bankruptcy No. 85–02594–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Jan. 16, 1987.

Irving M. Wolff, for creditors committee.

Joseph A. Gassen, Miami, Fla., for South Eastern Bank.

Michael R. Josephs, Miami, Fla., for Britton, Schantz and Schaztman.

Howard J. Berlin, Miami, Fla., for debtor.

### ORDER DENYING MOTION TO REMOVE DEBTOR'S COUNSEL

A. JAY CRISTOL, Bankruptcy Judge.

**THIS CAUSE** came before this Court for final hearing on August 19, 1986, upon a Motion by the Creditors' Committee to remove debtor's counsel due to alleged conflict of interest and to deny any and all compensation for debtor's counsel. The creditors' committee alleges that a conflict of interest exists which requires the removal of counsel for debtor and the return of all compensation received for legal representation. The problem presented deals with the ethical issue of vicarious disqualification or imputed disqualification. The Court is satisfied from the evidence adduced that no actual conflict ever did exist or does exist. The sole issue for determination relates to how far must we go to avoid the appearance of impropriety under the Code of Professional Responsibility.

The Court's attention is drawn to DR 5–105(D) which states "[i]f a lawyer is required to decline employment or to withdraw from employment under DR 5–105, no partner or associate of his firm may accept or continue such employment." (Although DR 5–105(D) applies through December 31, 1986, on January 1, 1987, the Rules Regulating the Florida Bar became effective. Although this issue arose under DR 5–105, the Court will also consider the issue under new Rule 4–1.10.)

The classic interpretation of DR 5–105(D) provides that if one attorney in a firm *ever* represented a client, then no other member of the firm could *ever* represent the other side of an interest against that client.

The Honorable Frank D. Upchurch, Jr. strictly construed the language of this rule in *Fitzpatrick v. Smith*, 432 So.2d 89 (Fla. 5th DCA 1983). In that case, defendant sought a writ of prohibition to disqualify the entire staff of the State Attorney's office from prosecuting him because the defendant had consulted on the charge to be prosecuted with an attorney who then joined the State Attorney's staff. Judge Upchurch determined these facts were sufficient to justify disqualification. In reversing this decision, the Supreme Court of Florida held that disqualification of the entire State Attorney's office was unnecessary where the attorney who participated in communication with defendant had neither provided prejudicial information relating to the charge nor personally assisted, in any capacity, in the prosecution. *State v. Fitzpatrick*, 464 So.2d 1185 (Fla.1985). This Court was substantially impressed with the philosophy expressed in the dissenting opinion of Mr. Justice Ehrlich:

> Although we are convinced that in this case no actual breach ... occurred, we are not the forum that needs convincing. To the public at large, the potential for betrayal in itself creates the appearance of evil, which in turn calls into question the integrity of the entire judicial system.

*Id.* at 1188.

This Court also has the gravest concern for the integrity of the judicial system and wishes to always avoid the appearance of impropriety. However, the classic interpretation of DR 5–105(D) is too harsh for these times and the "substantial relationship" rule is both more appropriate and workable, especially since it has been condoned by congressional enactment.

According to the "substantial relationship" rule, there must be a showing of some substantial relationship between the attorney and the matter under scrutiny to trigger disqualification of counsel. The Florida Supreme Court has commented in the Rules Regulating the Florida Bar,

> The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety and was proscribed in former Canon 9 of the Code of

Professional Responsibility. This rubric has a two-fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.

A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two (2) functions are involved: preserving confidentiality and avoiding positions adverse to a client.

Rules Regulating the Florida Bar, Rule 4–1.10 comment, 60 Florida Bar Journal, No. 8, at 408, 409. This is particularly true in bankruptcy. Unlike other forums and battlefields, where the lines of conflict are clearly drawn, in bankruptcy court, interested parties face proceedings with multiple litigants where the parties' interests, positions and relationships may change several times from pre-filing to post-filing and even thereafter. Professor and former Bankruptcy Judge John D. Ayer, in his article, "How to Think About Bankruptcy Ethics," **60 Am.Bankr.L.J. 355**, discusses the existing bar promulgated rules on legal ethics and states:

> My contention is that the bar pronouncements do not fit bankruptcy practice very well.

*Id.* at 356. He states further,

> It is a well-known, indeed a notorious, fact, that the pronouncements traditionally have focussed on what I may call the 'litigation model' of lawyer behavior. This model describes the behavior of the lawyer who tries cases—who collects evidence, prepares witnesses, and under-

takes to win a case before a judge in court.

*Id.* at 385, 386. He also points out as follows:

### A. CONFLICT OF INTEREST

I suggested above that the problem of excessive abstraction arises out of an irreconcilable tension between conflicting principles of loyalty. The problem is aggravated in bankruptcy, I think, for two reasons. One involves the parties and the interests at stake. Bankruptcy is rich in the potential for conflict because of the multiplicity of parties, and because their interests are so diverse. The other involves the manner of conducting the case. Bankruptcy involves shifting relationships: today's enemy is tomorrow's friend, and vice versa. Thus bankruptcy is rich in the potential for conflict, but it is also rich in the potential for cooperation. The parties need to work together even when they are at swords' points. This fact makes it extra difficult to identify just when a conflict exists.

The problem of multiple parties is easily understood. The classic civil lawsuit involves just two, the plaintiff and defendant. Civil litigation may involve more, of course, but two remains the norm. In bankruptcy, the situation is radically different. It is surely possible to have a bankruptcy case involving only one debtor and one creditor.[130] [Footnote deleted.] But the norm is otherwise: the typical bankruptcy case involves the debtor with a multiplicity of creditors, with different interests at stake. Some may be secured, others unsecured; some large, others small; some may have claims that are dischargeable, others not; some may have taken preferences, others not. In the nature of things, then, bankruptcy is a multi-party, rather than a two-party, event.

*Id.* at 386, 387. In addition, the law and the code specifically permit certain representations which have a built-in appearance of conflict of interest. The following are a few examples:

A. The same attorney may represent the pre-petition debtor and also the post-petition debtor in possession.

B. The same attorney may represent an individual creditor and the creditors' committee. Bankr. Code, 11 U.S.C.A. § 1103(b).

C. The same attorney may represent a creditor whose claim is partially secured and partially unsecured.

D. The same attorney may represent the debtor as well as principals of the debtor.

E. The same attorney may, in a Chapter 11 proceeding, represent the debtor in possession and represent a creditor, unless there is objection by another creditor and a showing of actual conflict. 11 U.S.C. § 327(c).

■ The last example is the case before this Court. The objecting creditor argues that the burden of proof in establishing no *actual conflict* is on the attorneys for the debtor in possession. The plain language of 11 U.S.C. § 327(c) seems to support the contrary notion because

> ... unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

However, the comment on Rule 4–1.10 states: "In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought." Rules Regulating the Florida Bar, Rule 4–1.10 comment, 60 Florida Bar Journal, No. 8, at 409.

The Court believes this language to mean that, in a case involving an objection under 11 U.S.C. § 327(c), the burden would be on the objecting creditor to prove conflict of interest.

In reviewing the evidence presented by the objecting creditor, the court finds the objecting creditor to have failed in establishing an actual conflict of interest. Yet, in almost all other cases involving disqualification of counsel, the burden of proof is upon the attorney seeking to qualify for employment. In the alternative, if the court has erred in the assignment of the burden of proof under 11 U.S.C. § 327(c), the Court finds that, upon all the evidence presented, the challenged attorneys have carried the burden of proof and affirmatively established that no actual conflict of interest exists.

Incidentally, the Court is somewhat puzzled as to why this issue has been raised. A 100% Plan has been proposed in this proceeding. The uncontested financial information indicates more assets than liabilities so that the 100% payment appears to be fully funded. Each creditor should be paid every penny due. Basically, every party in this proceeding is on the same side and the sooner the Plan is confirmed, the better for all.

While this Court could not agree more with the basic general philosophy of Mr. Justice Ehrlich's dissent in *Fitzpatrick*, times are changing. New situations will soon confront all courts with a host of previously unconsidered problems in the context of ethics.

Consider, for example, Rule 4–1.7(d):

> A lawyer related to another lawyer as parent, child, sibling, or *spouse* shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship. (emphasis supplied)

Rules Regulating the Florida Bar, Rule 4–1.7(d), 60 Florida Bar Journal, No. 8, at 405.

The Court notes that in 1960 only approximately 200 of 9000 law degrees were conferred upon women in the United States. Since then, the number has steadily grown and, in 1982, approximately 109,000 of of about 252,000 law students were women, which is about 43% of the student body. These lady lawyers tend to marry gentlemen lawyers. As these couples move through their career patterns, in metropolitan areas, as associates of ever larger multi-branched and interstate law firms, ethical considerations may surface and the potential for chaos becomes mind boggling. At

the present time, two excellent practitioners in the Bankruptcy Bar for the Southern District of Florida are married to each other. So far, they have not been found as advocates representing opposite sides before the bench.

Will a law firm with an outstanding bankruptcy division in Miami be disqualified from representing a client in a multimillion dollar reorganization all because the debtor owes a small auto rental bill to Avis and the disqualifier being that a young associate in the firm's Los Angeles office had in the past represented that rental company on personal injury claims in that city?

A report in the October 30, 1986 issue of the Wall Street Journal discussed the situation where a bankruptcy judge ordered the disqualification of counsel for A.H. Robbins because the firm had also represented Aetna, a potentially involved insurance carrier. The November 5, 1986 edition of the paper indicated the judge softened his position following the firm's withdrawal of its representation of Aetna. Also see Firms Facing More Ethical Challenges, The National Law Journal, December 1, 1986, at 1.

The number of proceedings that fall within the classic interpretation of "appearance of conflict" continues to grow through the marriage of attorneys and the expansion in size of law firms. Without consideration of these changes and the appropriate modification of criteria for determining disqualification, the wheels of justice will certainly turn much more slowly. This aspect of justice delayed may be a greater harm to the public at large than an occasional erroneous public perception of impropriety. The Court is hopeful that when the substantial relationship rule is applied, all proceedings and full disclosure be made in the open to vitiate all potential for impropriety or appearance thereof.

The Court has considered the authorities relied upon by the creditors' committee. In each case, an examination of relationships disclosed an actual conflict of interest well within the criteria which apply under the substantial relationship rule. In *In re Roberts*, 46 B.R. 815 (Bankr.D. Utah 1985), the attorneys were also creditors, who had other direct adverse interests to the debtor. *In re Anver Corp.*, 44 B.R. 615 (Bankr.D. Mass.1984) is a case in which the attorney and his partner were creditors. The attorney had an equity interest in the debtor and was also a corporate officer of the debtor. Similarly, in another case, the attorneys also held equity interests and were corporate officers of the debtor. *In re Leisure Dynamics, Inc.*, 33 B.R. 121 (D.C. D.Minn.1983).

The Court, having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

1) The Court finds that counsel for the debtor has met its burden of proof by establishing that debtor's counsel has no material interest opposing the debtor and is otherwise disinterested under the provisions of 11 U.S.C. § 327.

2) Similarly, the Court finds that counsel for the debtor carried its burden of proof under the Code of Professional Reponsibility and the Rules Regulating the Florida Bar. In reaching this conclusion, the Court notes that the present members of Britton, Schantz & Schatzman, P.A. never rendered services to Southeast on matters related to these proceedings. The Court further notes that the firm's present connections with Southeast concern matters totally unrelated to this case.

3) Members of the firm of Britton, Schantz & Schatzman, P.A. ("B, S & S") were associated with the firm of Britton, Cassel, Schantz & Schatzman, P.A. ("B, C, S & S") which in fact did represent Southeast on prior matters with the debtor, FLANIGAN'S ENTERPRISES, INC. However, by the time the debtor retained counsel in the fall of 1985, Southeast no longer was a significant portion of the client base of B, C, S & S and there were no longer any attorneys in residence at the

firm who had anything to do with the previous transactions.

 4) B, S & S is the attenuated branch of the first major bankruptcy law firm in the Greater Miami area. A great many of the active bankruptcy practitioners that regularly appear before this Court started or passed through the initial firm of Fiebelman and Friedman over the last thirty years. Indeed Harold Friedman, the senior partner of the original firm, became the partner of Irving Wolff (now counsel for the creditors' committee) for a period of time. His son, Steven Friedman, was associated with the original firm and at another time was also as an employee of Wolff and Friedman. And so the web of associations is woven and cross-woven. The very arguments used by Irving Wolff to disqualify B, S & S could be turned and used to disqualify Irving Wolff as counsel for the creditors' committee if the Court were to follow the attenuation that far. The Court believes that the better rule is the substantial relationship rule. An attorney who has personally represented a client on one side of a case should not be permitted to appear as attorney for his former client's opponent where he might use confidential information concerning his original client obtained from previous representation, on behalf of the new client, who is now the former client's foe. Nothing like that scenario has been shown in this case.

5) B, S & S came into existence on April 1, 1986. Thereafter, the firm filed motions for substitution of counsel in all matters in which its predecessor firm was counsel of record in the United States Bankruptcy Court for the Southern District of Florida. That substitution also included the above-styled proceeding.

 6) B, S & S has no present relationship with any of the former members of B, C, S & S who may have had any dealings with the Southeast/FLANIGAN'S ENTERPRISES, INC. matters. At the time FLANIGAN'S ENTERPRISES, INC. requested that counsel engage in debtor's reorganization, the firm was advised by Southeast that it had no objection to said representation.

7) Members of the creditors' committee and committee's counsel have been aware of the prior relationship between B, C, S & S and Southeast since the inception of these proceedings.

8) Neither Southeast, the primary party to lodge a protest, nor the debtor has voiced any objection regarding debtor's legal representation.

9) Similarly, there has been no showing that the debtor's legal representation by B, S & S in any way has prejudiced the unsecured creditors during the course of these proceedings or in any way interferes with said creditors receiving 100% of what is due them.

10) Moreover, both the presence of special counsel, as well as the advanced stage of these proceedings militate against disqualification of debtor's counsel. *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 167 (Bankr.D.Ariz.1984).

11) Section 327 [1] provides for a two-prong test. Debtor's counsel must hold no interest adverse to debtor's bankruptcy estate. Counsel must also be a disinterested party. The law firm of Britton, Schantz & Schatzman holds no interest adverse to debtor's bankruptcy estate and is disinterested as that term is defined in Section 101(13) of the Bankruptcy Code.[2] In the Court's view, neither the firm's present nor prior association with Southeast rises to a disqualifying level.

12) The Court also may disqualify a law firm under the ABA Code of Professional Responsibility (in Florida, The Code of Professional Responsibility) or the ABA Model Rules of Professional Conduct (as of January 1, 1987, The Rules Regulating the Florida Bar) which govern the conduct of lawyers practicing before the federal courts. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 172 n. 15 (5th

---

1. 11 U.S.C.A. § 327.

2. 11 U.S.C.A. § 101(13).

Cir.1979). The Code of Professional Responsibility, formerly applicable in Florida and now superseded by the new "Model Rules," likewise governs the disqualification of attorneys in bankruptcy proceedings. *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 335 (E.D.Pa.1982). The ABA Code of Professional Responsibility does not require disqualification since there has been no showing of a "specifically identifiable impropriety" on the part of debtor's counsel. This Court also finds that there is no likelihood of public suspicion or obloquy by virtue of allowing debtor's counsel to continue. The committee, of course, contends it will be suspicious of debtor's counsel but its suspicions are not those of the public with whom this Court and the Bar's Official Pronouncements on Lawyer Behavior are concerned. *United States v. Hobson,* 672 F.2d 825 (11th Cir. 1982).

13) The Court further considered the recommendations of Professor and former Bankruptcy Judge John D. Ayer in his article, "How to Think About Bankruptcy Ethics," **60 Am.Bankr.L.J. 355.** In summarizing the article, the Professor asks:

1. Does it pass the smell test?
2. Is it fair? [3]

There is no evidence that establishes or tends to prove either impropriety or wrongdoing or disadvantage or prejudice to any party. In fact, the evidence establishes the opposite. The facts pass the smell test. They pass the fairness test.

**WHEREFORE,** this Court, after consideration of the Committee's Motion to Remove Counsel for the Debtor, denies the Motion with prejudice.

3. This simplified standard was given to the court during a presentation by the author at the National Conference of Bankruptcy Judges held in October 1986 at Nashville, Tennessee.