**In re Stephan Jay LAWRENCE, Debtor.**

**Bankruptcy No. 97–14687–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida.

Feb. 5, 1998.

Robert A. Stok, Rosenthal Rosenthal et al., Aventura, FL, for Debtor.

James Fierberg, Paul Singerman, Berger Davis & Singerman, Miami, FL, for Trustee, Alan L. Goldberg.

Brian Behar, Behar, Gutt & Glazer, Aventura, FL, for Frederica Lawrence.

Robert Angueira, Office of U.S. Trustee, Miami, FL.

### ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S SUPPLEMENTAL MOTION FOR EMPLOYMENT OF BERGER DAVIS & SINGERMAN, P.A. AS ATTORNEYS FOR THE TRUSTEE

A. JAY CRISTOL, Chief Judge.

**THIS CAUSE** came on for evidentiary hearing before the Court at Miami, Florida,

on January 21, 1998 at 10:00 a.m., and January 22, 1998 at 11:30 a.m., upon the Trustee's Supplemental Motion for Employment of Berger, Davis & Singerman, P.A, ("BDS") as Attorneys for the Trustee (Court Paper # 120–1). The BDS Motion was accompanied by the Amended Rule 2014 Affidavit of Attorney for the Trustee, dated December 23, 1997. A Second Amended Rule 2014 Affidavit of Attorney for the Trustee was filed on January 15, 1998 (Court Paper # 131–1). The Debtor filed his Memorandum in Opposition to the Continued Retention of Berger, Davis & Singerman as Counsel for the Trustee (Court Paper # 129–1). The Debtor's Memorandum was supported by the Affidavits of Brian Behar, Esq. ("Attorney Behar"), and the Debtor, Stephan Jay Lawrence. Attorney Behar also indicated to the Court at the hearing that he was an interested party in the proceeding in his capacity as counsel to the estate of Frederica Lawrence [1], and that notwithstanding his failure to file any pleadings in connection with this proceedings, his client supported the Opposition of the Debtor to the continued retention of BDS.

The issue before this Court is whether BDS may continue to represent the Chapter 7 Trustee in this case after December 15, 1997, the date on which BDS hired Brian Rich as an associate attorney. Attorney Rich was formerly employed by the firm of Behar, Gutt & Glazer, P.A.("BGG"), counsel to Frederica Lawrence, and now after her death, counsel to her estate.

The Debtor has contended that he retained BGG for and on behalf of his mother, Frederica Lawrence, and that he also engaged BGG under a "general consultancy" with respect to issues in his bankruptcy case. See, Debtors Opposition at Page 3. The Debtor has been represented in these proceedings, for all purposes by Robert Stok, Esq., of the firm of Rosenthal, Rosenthal, Rasco, Stok, Denberg & Wolf., P.A.

The only undertakings of record by Frederica Lawrence in this case are (i) the filing of a Reaffirmation Agreement (Court Paper # 53–1)(a matter in which the Trustee was not involved), (ii) Frederica Lawrence's Motion to Quash a Motion to Quash Subpoena and/or Motion for Protective Order (Court Paper # 55–1) and (iii) a Notice of Frederica Lawrence's Joinder in the Debtor's Opposition to the Trustee's Motion for Issuance of Subpoenas Pursuant 11 U.S.C. § 1783(a) (the "Walsh Act"). (Court Paper # 89–1).

At the hearing, by agreement of the parties, the Court received the affidavits of Stephan Jay Lawrence, Brian Behar and Brian Rich as direct testimony and took live testimony and evidence from the Debtor, Attorney Behar, Attorney Rich and Alan Goldberg, the Chapter 7 Trustee in this case. After due consideration of the candor and demeanor of the witnesses, having considered the argument of counsel, having reviewed the memoranda of law submitted by BDS and the Debtor and the authorities cited and being otherwise fully advised in the premise, the Court makes the following findings of fact and rulings of law:

a. Stephan Jay Lawrence, the Debtor in this case, is the client of and is represented by Attorney Robert A. Stok and the firm of Rosenthal, Rosenthal, Rasco, Stok, Denberg & Wolf, P.A.;

b. Frederica Lawrence was a client of and was represented by Attorney Behar and BGG;

c. Frederica Lawrence is not a Debtor in this case and is not a party in any proceeding pending before this Court;

d. The testimony of Attorney Behar was credible and believable;

e. The testimony of Attorney Rich was candid, forthright and credible;

f. The testimony of Alan Goldberg was completely credible;

g. The Court does not believe the testimony of the Debtor, Stephan Jay Lawrence and does not find the Debtor to be credible;

h. The Court specifically rejects the testimony of the Debtor that he engaged BGG

---

1. While not relevant to any aspect of the Court's decision, the Court notes that Attorney Behar had not as of the date of the hearings on this matter filed a Notice of Appearance on behalf of the estate of Frederica Lawrence.

under a "general consultantcy" or that BGG in any manner served as his attorneys. Rather, the Court accepts the testimony of Attorney Behar that BGG represented and owed an allegiance solely to Frederica Lawrence. This finding is based upon, *inter alia,* Attorney Behar's testimony that he never considered that BGG owed any professional responsibility to the Debtor. *See,* transcript of January 21, 1998 hearing, at page 24, Lines 9–19. The unrebutted testimony of Attorney Behar indicated that there was no retention letter between the Debtor and BGG, no engagement agreement, no evidence of billings from BGG to Mr. Lawrence or any evidence of payments by Mr. Lawrence, individually, to BGG;

i. The evidence is unrebutted that neither Attorney Behar, Attorney Rich nor any other attorney at BGG ever met with or even spoke to Frederica Lawrence, nor did any BGG attorney ever correspond with Frederica Lawrence. *See,* Transcript of January 21, 1998 hearing, Page 25, Line 14–19.[2] Whatever information which BGG received with respect to Frederica Lawrence was derived from conversations with the Debtor or Attorney Stok, or documents which the Debtor or Attorney Stok knowingly and voluntarily made available to BGG;

j. Frederica Lawrence was the aged mother of the Debtor. Testimonial evidence has been offered that Ms. Lawrence died on or about January 12, 1998;

k. The Court finds that while the Debtor may have been seeking to assist his aged mother by a referral to BGG, the Debtor and his mother are obviously two separate individuals. Stephan Jay Lawrence was and is the Chapter 7 debtor, the Debtor has scheduled Frederica Lawrence as a creditor of his estate. To date, Frederica Lawrence's only involvement in this case has been as a potential fact witness, who, through counsel she had never met, spoken to or given directions to, had endeavored on two occasions to block the Trustee's discovery efforts in this case;

l. The Trustee has testified that while there is concern that Ms. Lawrence may have received distributions from an offshore trust that the Debtor created prior to his bankruptcy, the trustee has no present intention to commence an adversary proceeding against Ms. Lawrence's estate. Accordingly, the Court finds that there is presently no conflict of interest between the Trustee and Ms. Lawrence or her estate;

m. The Court further finds that the allegation by the Debtor that there existed an express, contractual agreement whereby attorney-client confidences would be divulged to BGG only if the confidentiality of same was preserved in BGG's representation of Ms. Lawrence to be insupportable in fact or law. No such contract was introduced nor was any such agreement established by the testimony of any of the witnesses. In fact, as stated above, Attorney Behar has affirmatively testified that there has never been any such agreement. Rather, this Court finds that any attorney-client privilege held by the Debtor was knowingly waived by the voluntary and consensual disclosures to Attorney Behar. *See,* January 22, 1998 transcript at pages 197 and 198. Notwithstanding the allegations in the Debtor's Opposition (Court Paper # 129–1, page 3) of the existence of a "joint defense" arrangement between the Debtor and Ms. Lawrence, there has been no evidence presented of any such joint defense. Nor does it appear that there could be any such joint defense arrangement. Frederica Lawrence has not been a party in any proceeding before this Court to date. She was simply the subject of the Trustee's efforts to take discovery under Rule 2004, Federal Rules of Bankruptcy Procedure;

l. The Court does find that in the representation of the interests of Frederica Lawrence, BGG may have obtained privileged and confidential information related to her interests, the disclosure of which may be prejudicial to the interests of the estate of Frederica Lawrence. However, the testimony did not evidence that Attorney Rich was

---

**2.** The evidence clearly suggests and the Court notes that to date all actions taken by Attorney Behar and BGG have been at the direction of Attorney Stok, counsel to the Debtor. While again not relevant to the court's decision herein, it appears as though and the evidence suggests that Attorney Stok has been indirectly acting as counsel to Frederica Lawrence, and causing BGG to assist in the Debtor's efforts to block the Trustee's discovery efforts.

ever substantially involved with the matter or that he ever studied the files or carried "secrets" with him;

m. Although this Court finds that there is no conflict between the Trustee and the estate of Frederica Lawrence at the present, and that Ms. Lawrence has been, at most, a potential fact witness, the possibility that the Trustee may seek to challenge certain transactions between the Debtor and his mother gives rise to a concern by this Court as to the potential appearance of impropriety, based upon the theoretical imputation of alleged confidences of Frederica Lawrence from Attorney Behar to Attorney Rich while Mr. Rich was employed at BGG;

■ n. Based upon the record before this Court in this case, the Court could easily conclude that no further analysis or adjudication is necessary and that BDS may continue to represent the Trustee in all aspects of this case. But, out of an abundance of caution and with great deference to this Court's legitimate concerns about the appearance of any impropriety, the Court hereby orders that BDS erect a "chinese wall" around Attorney Rich, generally, in the Lawrence bankruptcy case, and that BDS be precluded from the institution and prosecution of any adversary proceeding against the estate of Frederica Lawrence. Nothing in this order shall be construed to limit or interfere in any respect with the conduct by BDS, as the Trustee's counsel, of discovery concerning any such transactions between the Debtor and his mother or her estate. In the event the Trustee, upon the advice of BDS or otherwise, elects to commence any action against the estate of Frederica Lawrence, the Trustee shall retain special counsel and the BDS firm shall turn over to special counsel all of its relevant discovery with respect to any such claim against the estate of Frederica Lawrence. In such event, BDS shall, of course, be permitted to satisfy all of its ethical obligations in the favor of its client, the Trustee, in ensuring that transition of this particular aspect of the representation is smooth and efficient.

■ This Court has reviewed the facts and evidence presented in this matter and based upon the record before the court in this case and the foregoing findings, next considers whether in light of such facts and evidence, and the theoretical imputation of knowledge to Attorney Rich of the alleged confidences of Frederica Lawrence (apparently communicated solely through Attorney Stok, the Debtor's counsel or the Debtor), BDS may continue to serve as general counsel to the Trustee, in this Chapter 7 case. This Court is of the opinion that BDS is not generally disqualified to represent the Trustee.

■ Disqualification of counsel is a drastic measure to be used only by a court when absolutely necessary. Motions seeking disqualification should be viewed with extreme caution and the remedy of disqualification imposed sparingly since disqualification can be utilized as a technique of harassment or to gain a tactical advantage. *See, Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–722 (7th Cir.1982), *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938, 941 (11th Cir.1982) and *U.S. v. Hobson*, 672 F.2d 825, 828 (11th Cir.1982). *See, also*, comments to Rule 4–1.7 of the Rules Regulating the Florida Bar ("Where the conflict is such to clearly call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. *Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.*")(Emphasis added). This caveat is particularly apropos in the instant case as the Court notes that this is the second attempt by the Debtor to disqualify BDS in less than six (6) weeks.[3]

The resolution of this matter requires an analysis of Rules 4–1.9 and 4–1.10 of the Rules Regulating the Florida Bar.

Rule 4–1.9 addresses conflicts of interest with respect to former clients and provides that:

---

**3.** The Debtor has previously filed a Motion to Compel Disclosure of any Actual or Potential Compensation Agreement and to Disqualify Trustee and His Counsel. (Court Paper # 94–1). After a lengthy evidentiary hearing, this Court determined that the Debtor's Motion was frivolous, unfounded and vile. This Court labeled the Motion as "vicious, outrageous, baseless and unsupported by credible evidence." See, transcript of December 3, 1997 hearing.

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 4–1.6 would permit with respect to a client where the information has become generally known.

Rule 4–1.10 addresses imputed disqualification, and provides that:

(a) **Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4–1.7, 4–1.8(c), 4–1.9, or 4–2.2.

(b) **Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4–1.6 and 4–1.9(b) that is material to the matter.

(c) **Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by rules 4–1.6 and 4–1.9(b) that is material to the matter.

(d) **Waiver of Conflict.** A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4–1.7.

This Court has previously rejected a rigid application of the rules applicable to a determination of imputed disqualification in favor of the "functional analysis" which is urged by the comments to Rule 4–1.10 ("A rule based upon a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidences and avoiding positions adverse to a client"). *See, In Re Flanigan's Enterprises, Inc.,* 70 B.R. 248, 250 (Bankr. S.D.Fla.1987). In *Flanigan's,* this Court acknowledged the unique nature of bankruptcy representations and the importance of the functional analysis to determine what, if any, ethical transgressions may truly have occurred in any given case. *Id.* at 250. In *Flanigan's,* this Court "considered the recommendations of professor and former Bankruptcy Judge John D. Ayer in his article, 'How to Think About Bankruptcy Ethics.'" 60 *Am. Bankr.L.J.* 355. In summarizing the article, the Professor asks:

1. Does it [the challenged representation] pass the smell test?

2. "Is it fair."

As acknowledged in *Flanigan's,* Professor Ayer's smell test is simple and elegant. After applying the smell test in *Flanigan's,* the Court held that disqualification was inappropriate if "there is no evidence that establishes or tends to prove either impropriety or wrongdoing or disadvantage or prejudice to any party. In fact, the evidence establishes the opposite. The facts pass the smell test. They pass the fairness test." *Id.* at 254. The same analysis and result are applicable in the instant case.

In the non-bankruptcy context, in *State Farm Mutual Automobile Insurance Company, et al. v. K.A.W, etc., et al.,* 575 So.2d 630 (1991), the Florida Supreme Court extended the standard which had existed under the former Code of Professional Responsibility to the current Rules of Professional Conduct in determining whether disqualification should be mandated under circumstances of imputed contamination. The court held that "[i]n conflict-of-interest cases such as this arising under the former Code of Profession-

**664**

al Responsibility, one seeking to disqualify opposing counsel was required to show (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." *Id.* at 635.

■ There is, therefore, a two-prong analysis which must be undertaken to determine whether BDS should be disqualified. The first prong requires an analysis of whether a cognizable attorney-client relationship existed between the party seeking disqualification and the affected attorney. If such a relationship be proven, an irrefutable presumption exists that confidential information was disclosed. The second prong requires a factual determination that the "matters" of adverse representation were the same or substantially related. Both prongs of the inquiry must be satisfied to require disqualification.

In the instant case, the party seeking the disqualification and filing the sole opposition of record was the Debtor, Stephan Jay Lawrence. As noted in the findings hereinabove, BGG did not represent the Debtor, and as such, no attorney-client relationship has been established between the Debtor and BGG. Therefore, if it is the Debtor who is seeking the disqualification of BDS, there is no need to review the second prong of the *State Farm Mutual* test, and continued employment of BDS is proper in all respects.

If, however, it is the estate of Frederica Lawrence that is opposing the continued employment of BDS, the *State Farm Mutual* type test may become applicable. This Court notes that no formal opposition to the continued employment of BDS was ever filed by Frederica Lawrence, nor was any form of joinder in the Debtor's Opposition filed. In fact, the only way in which this Court is aware of the opposition of Frederica Lawrence to the continued employment of BDS was derived from Attorney Behar's appear-

ance at the hearings and his *ore tenus* opposition on the record. Notwithstanding, for purposes of the Court's analysis, the Court will recognize the opposition of Frederica Lawrence.

■ The test for determining whether the attorney-client relationship exists is based in part upon the subjective belief that the client is being represented by the attorney. However, this belief must be a reasonable one. *See, Victoria Love Bartholomew, et al. v. Joseph M. Bartholomew, et al.,* 611 So.2d 85, 86 (Fla. 2d DCA 1992). This court has previously determined that an attorney-client relationship existed between Frederica Lawrence and BGG.[4] It is unclear from the testimony and other evidence adduced whether Frederica Lawrence, in fact, ever had any actual knowledge of the representation of her interests by BGG. It is therefore unclear whether there can be any presumption that attorney-client confidences were exchanged.

The Court is left then to determine whether the matters handled by BGG while Attorney Rich was employed by BGG pertaining to Frederica Lawrence are the same or substantially related to the matters in which BDS may now be involved as Counsel to the Trustee in respect of the interests of Ms. Lawrence. For the following reasons, this Court unhesitatingly finds that the matters are not the same or substantially related.

At the express request of the Debtor, this Court takes judicial notice of this voluminous file and the numerous pleadings, hearings, evidence, argument and orders in the case to date. This Court is aware that the Trustee is investigating, *inter alia,* the facts and circumstances surrounding the creation of an offshore trust in to which the Debtor transferred several million dollars prior to the commencement of this bankruptcy case, the exemptibility of the Debtor's pension funds and the adequacy of the disclosures of the Debtor concerning his assets and liabilities.

The docket in this case only evidences two (2) appearances by Attorney Behar in this

---

**4.** This determination is reached despite the fact that the record indicates that there was never any communication whatsoever between Frederica Lawrence and Attorney Behar, or any mem-

ber or employee of BGG, and that all communication concerning Frederica Lawrence and her attorneys was channelled through third parties.

case on behalf of Frederica Lawrence, prior to the instant matter. The first was in connection with the September 2, 1997, filing of Frederica Lawrence's Motion to Quash Subpoena and*or Motion for Protective Order (Court Paper # 55–1). This motion was non-substantive and sought relief on procedural grounds. Specifically, the Trustee served a Notice of Taking Rule 2004 Examination Duces Tecum by United States mail. Frederica Lawrence, by and through Attorney Behar responded that such service was ineffectual.

The record reveals that the only other appearance by Frederica Lawrence was in connection with the November 12, 1997 filing of a Notice of Frederica Lawrence's Joinder in the Debtor's Opposition to the Trustee's Motion for Issuance of Subpoenas Pursuant to 28 U.S.C. § 1783(a) (the "Walsh Act") (Court Paper # 89–1). The Joinder pleading was in the nature of a notice only and contained no substantive argument. The sum and substance of the Walsh Act litigation was procedural and not substantive. At the November 3, 1997 hearing on the Trustee's motion regarding the Walsh Act, Attorney Behar failed to advise the Court of the filing of the Notice of Joinder, and Attorney Behar, on behalf of BGG, elected not to make any oral argument of behalf of Frederica Lawrence.

The testimony adduced at the hearings revealed that up until the time of her death, Frederica Lawrence was nothing more than a potential fact witness. The engagement of Attorney Behar and BGG was limited to efforts to oppose and block the Trustee's attempts to depose Ms. Lawrence. This is the parameter of the "matter" upon which the alleged conflict before this Court is predicated. With the death of Ms. Lawrence, there can be no deposition of her, and as a result, all of the potential conflicts in the matter are rendered moot. Ms. Lawrence's death also moots the entirety of the Walsh Act litigation.

■ The burden to establish the nature of the representation in the matter as being the same or substantially related falls squarely upon the party seeking the disqualification. *Ford v. Piper Aircraft Corporation, et al.,*

436 So.2d 305, 307 (Fla. 5th DCA 1983) ("Requiring the disqualification of an attorney is, however, a matter of no small consequence. Before a client's former attorney will be disqualified from representing a party whose interest are adverse to the former client's, the former client must show that the matters embraced in the pending suit are substantially related to the matters or the cause of action wherein the attorney previously represented him, the former client."). Cases where the degree of relatedness was substantial enough to warrant disqualification include, for instance, where the attorney obtained detailed technical information about the instrumentality of a tort in his representation of a putative tortfeasor, and later in an unrelated lawsuit involving the exact same instrumentality represents a different plaintiff against the same tortfeasor, *Ford v. Piper Aircraft Corporation, Id.,* see also, *Sears, Roebuck & Company v. Stansbury,* 374 So.2d 1051 (Fla. 5th DCA 1979); or where there was a direct relationship between the initial and subsequent matters, such as the attorney for the foreclosing mortgagee having previously represented the mortgagor in the original conveyance, *Campbell v. American Pioneer Sav. Bank,* 565 So.2d 417 (Fla. 4th DCA 1990); or where the adverse litigant is a successor-in-interest to the prior, original party that was represented by the attorney, *Kenn Air Corp., v. Gainesville–Alachua County Regional Airport Authority,* 593 So.2d 1219 (Fla. 1st DCA 1992.)

■ In determining the substantial nature of the representation, an inquiry into the degree of involvement of the attorney is appropriate. The comments to Rule 4–1.9 of the Rules Regulating the Florida Bar suggest that "[t]he scope of the 'matters' for purposes of Rule 4–1.9(c) may depend on the facts of a particular situation or transaction. The lawyer's involvement can be a question of degree." In *Royal Caribbean Cruises, Ltd., v. Buenaagua, et al.,* 685 So.2d 8 (Fla.3d DCA 1996), the court held that "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing sides in the matter in question." *Id.* at 10. The *Royal Caribbean* court

suggests that disqualification is appropriate where a factual situation is presented which is "rife with the possibility of discredit to the Bar and the administration of justice." *Id.*

In this case, neither the Debtor nor the estate of Frederica Lawrence met their burden to establish that the matter upon which Attorney Behar and BGG represented Frederica Lawrence was the same or substantially related to the general representation of the Trustee by BDS after Attorney Rich became employed by BDS. To the contrary, as established by the testimonial evidence at the hearing, the mandate of BGG was simply to represent the interest of Frederica Lawrence in one matter, to wit: attempting to quash the subpoena issued to Ms. Lawrence and in joining in the Debtor's opposition to the Trustee's Walsh Act motion all to advance the Debtor's efforts to preclude the Trustee from deposing Ms. Lawrence. Thus, the second prong of the *State Farm Mutual* test has not been met.

Based upon all of the referenced testimony, the argument of counsel, a review of the citations of law from the parties and the foregoing conclusions and findings, the Trustee's Supplemental Motion for Employment of Berger Davis & Singerman, P.A. as his Counsel is **GRANTED,** provided, that out of an abundance of caution, BDS shall erect a "chinese wall" with respect to Attorney Brian Rich, who shall not be involved in the representation of Alan Goldberg as Chapter 7 Trustee for the estate of Stephan Jay Lawrence. If the Trustee determines that an adversary proceeding should be instituted against the estate of Frederica Lawrence, BDS shall be precluded from the institution and prosecution of any such adversary proceeding against the estate of Frederica Lawrence. Nothing in this order shall be construed to limit or interfere in any respect with the conduct by BDS, as the Trustee's counsel, of discovery concerning any such transactions between the Debtor and Frederica Lawrence or her estate but not discovery against the Frederica Lawrence. In the event the Trustee, upon the advice of BDS or otherwise, elects to commence any action against the estate of Frederica Lawrence, the Trustee shall retain special counsel and

BDS firm shall turn over to special counsel all of its relevant discovery with respect to any such claim against the estate of Frederica Lawrence. In such event, BDS shall, of course, be permitted to satisfy all of its ethical obligations in the favor of its client, the Trustee, in ensuring that transition of this particular aspect of the representation is smooth and efficient.