**In re Stephan Jay LAWRENCE, Debtor.**

**Bankruptcy No. 97–14687–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Sept. 8, 1999.

Paul Steven Singerman, James H. Fierberg, Berger, Davis & Singerman, P.A., Miami, FL, for the Chapter 7 Trustee.

Mark D. Cohen, Mark D. Cohen P.A., Hollywood, FL, for Bear, Stearns & Co., Inc.

Susan E. Trench, Richard Goldstein, Goldstein & Tanen, P.A., Miami, FL, for Mauritian Trustee.

Brian Behar, Behar, Gutt & Glazer, P.A., Aventura, FL, for the Estate of Frederica Lawrence.

Michael S. Budwick, Kozyak, Tropin & Throckmorton, Miami, FL, for Chapter 7 Trustee.

Harold D. Moorefield, Jr., Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, Miami, FL, for Lynn Gann.

Ronald G. Neiwirth, Fowler, White, et al., Miami, FL, Allen P. Reed, Miami Beach, FL, Robert A. Stok, Aventura, FL, Paul J. McMahon, Paul Joseph McMahon, P.A., Miami, FL, for the debtor.

Howard N. Kahn, Kramer, Green, Zuckerman & Kahn, P.A., Hollywood, FL, for Bear, Stearns & Co., Inc.

Alan Goldberg, Trustee Crisis Management, Inc., Miami, FL.

Jill Traina, South Hollywood, FL, for Bear, Stearns & Co., Inc.

Gary S. Glasser, Miami, FL, for Elissa de Moreno.

## ORDER ADJUDICATING DEBTOR IN CIVIL CONTEMPT FOR VIOLATION OF THE AUGUST 26, 1999 ORDER GRANTING TRUSTEE'S MOTION TO COMPEL DEBTOR TO TURN OVER TRUST RES AND TO FULLY DISCLOSE ALL TRUST TRANSACTIONS AND ORDER TO SHOW CAUSE NOTICE PURSUANT TO FED.R.BANKR.P. 9020(b)

A. JAY CRISTOL, Chief Judge.

THIS CAUSE came on for hearing before the Court at Miami, Florida on Thursday, September 2, 1999 at 2:30 p.m., pursuant to the Status Conference scheduled in paragraph 4 of the August 26, 1999 *Order Granting Trustee's Motion to Compel Debtor to Turn Over Trust Res and to Fully Disclose All Trust Transactions* (Turn Over Order) (Court Paper # 670). The terms of the Turn Over Order, which are incorporated herein by reference, required the Debtor, Stephan Jay Lawrence, on or before 2:00 p.m. on September 2, 1999 to, *inter alia,* turn over to the Chapter 7 Trustee the *res* of the putative Lawrence Family 1991 Inter Vivos Trust ( the so-called Mauritian Trust) (hereafter the "Alleged Trust"), and to provide a full accounting of all transactions in respect of the Alleged Trust. Pursuant to the Turn Over Order, in the absence of the Debtor's compliance therewith, the Debtor would be adjudged in contempt of this Court and the of the Turn Over Order. In attendance at the Status Conference were the Debtor and two of his counsel, counsel for the Debtor's sister, the Trustee and his counsel and Robert Anguiera, Assistant United States Trustee. In addition, United States Bankruptcy Judge Thomas Utschig, who has presided over numerous proceedings in this case [1] and who entered

---

1. Judge Utschig previously conducted a three-day evidentiary hearing on July 21–23, 1998 in respect of the Trustee's *Complaint Objecting to Debtor's Discharge.* The detailed findings and rulings derived from the Debtor's

testimony are published in *In re Lawrence,* 227 B.R. 907 (Bankr.S.D.Fla.1998). Judge Utschig also adjudicated cross-motions for summary judgment in respect of the Trustee's objection to the Debtor's claimed exemption

the August 26, 1999 Turn Over Order, also participated in the Status Conference via telephone. The Court, having quite an extensive institutional memory of this case, has reviewed the record in both the main case and in the adversary proceeding previously commenced by the Trustee against the Debtor (Adv.Pro. 98–1211–BKC–AJC–A) (the "Adversary Proceeding") and has considered the testimony of the witnesses at the Status Conference and the argument of counsel, and being otherwise fully advised in the premises, hereby incorporates herein by reference all of the findings and rulings entered in the record on August 26, 1999 by Judge Utschig and Judge Utschig's findings and rulings in *In re Lawrence*, 227 B.R. 907 (Bankr.S.D.Fla. 1998) and makes the following findings and rulings:

1. This Court concurs with the previous findings by Judge Utschig that the Debtor is not credible,[2] except that the Court does accept the Debtor's testimony that establishment or settlement of the Alleged Trust in 1991 was done by the Debtor voluntarily.

■ 2. This Court therefore has no doubt that the Debtor retains the requisite power to cause the return of the trust *res* to the United States in compliance with the Turn Over Order. The foregoing is based, in part, on Paragraph 12 of the Trust Indenture which purportedly established the Alleged Trust specifically reserves to the Settlor, the Debtor, the right to change the Trustee(s) of the Alleged Trust. Thus, the Court does not believe the Debtor's conclusory denials that he cannot undo what he did and that he is powerless to repatriate the trust *res* to the Chapter 7 estate and that compliance with the Turn Over Order is impossible.

3. This Court's finding in respect of the Debtor's power and ability to cause compliance with the Turn Over Order is not limited to paragraph 12 of the Indenture of the Alleged Trust, or to any other provision of the Alleged Trust. Indeed, this Court's finding is based as well on the entirety of the record before the Court in this case and in the Adversary proceeding, and the Court's own common sense: it defies reason—it tortures reason—to accept and believe that this Debtor transferred over $7,000,000 in 1991, an amount then constituting over ninety percent of his liquid net worth,[3] to a trust in a far away place administered by a stranger—pursuant to an Alleged Trust which purports to allow the trustee of the Alleged Trust total discretion over the administration and distribution of the trust *res*. The Court declines to abandon common sense and to torture reason in the manner urged by the Debtor.

■ 4. This Court disagrees with the Debtor that it is the Trustee's burden to establish that the Debtor can, in fact cause compliance with the Turn Over Order. It is the Debtor's burden to establish the defense of impossibility. *U.S. v. Rylander*, 460 U.S. 752, 760, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The Court concurs with the position recently taken by the Ninth Circuit Court of Appeals in *Federal Trade Commission v. Affordable Media, LLC, Denyse Lindaalyce Anderson and Michael K. Anderson*, 179 F.3d 1228 (9th

---

in the Standardized Computer Services of Boca Raton, Inc. Defined Benefit Pension Plan.

**2.** This Court has previously had the opportunity to observe the demeanor and candor of the Debtor in evidentiary proceedings before this Court. See, In each of the two prior instances in which the Debtor has testified before this Court, the Court has specifically made findings that the Debtor's testimony to be not credible and not believable. See, *In re*

*Lawrence*, 217 B.R. 658, 660 and this Court's *Order Denying Debtor's Motion to Compel Disclosure of Actual and Potential Compensation Agreements and to Disqualify Trustee and His Counsel* (Court Paper # 195–1). The Court notes that Judge Utschig has made similar findings concerning the Debtor's testimony before Judge Utschig.

**3.** See, *In re Lawrence*, 227 B.R. 907, 913 (Bankr.S.D.Fla.1998).

Cir.1999), another case involving the use of an offshore asset protection trust. There, the Court of Appeals correctly observed that it is the very purpose of these types of offshore asset protection trusts to create a scenario whereby a "defendant can assert that compliance with a court's order to repatriate the trust assets is impossible". See, *Anderson* at 1240. Indeed, in the context of an offshore asset protection trust, the *Anderson* Court held that "the burden of asserting an impossibility defense will be particularly high because of the likelihood that any attempted compliance with the court's orders will be merely a charade rather than a good faith effort to comply. Foreign trusts are often designed to assist the settlor in avoiding being held in contempt of a domestic court while only feigning compliance with the court's orders." *Id.* at 1241. This is precisely the Debtor's intention before this Court. The Debtor has not met his burden.

■ 5. The Court rejects the Debtor's contention that under the facts of this case he cannot be compelled to do an act that is impossible, to wit: repatriate the res of the Alleged Trust. While impossibility is a recognized defense to a civil contempt order, the law does not recognize the defense of impossibility when the impossibility is self created. *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1521–1522 (11th Cir.1986). The Debtor has testified that he voluntarily established the Alleged Trust in 1991. Since the provisions which he now relies upon in order to substantiate his inability to comply with the Turn Over Order were of his own creation, he may not claim the benefit of the impossibility defense. Giving credence to the Debtor's argument would be tantamount to succumbing to the pleas for sympathy from an orphan who has killed his own parents!

6. The efforts by the Debtor to claim an impossibility defense are nothing more than a part of his continuing efforts to hinder, delay and defraud the creditors of his bankruptcy estate.

Based upon the foregoing findings and the record before the Court in this case and in the Adversary Proceeding, it is **ORDERED** and **ADJUDGED** as follows:

■ A. The Debtor is adjudged in civil contempt for his wilful failure to comply with the specific and definite provisions of the August 26, 1999 Turn Over Order which, *inter alia*, required the Debtor to turn over to the bankruptcy trustee the *res* of the Alleged Trust on or before 2:00 p.m. on Thursday, September 2, 1999.

B. The Debtor is ordered to pay $10,-000 per day commencing on September 2, 1999 and continuing for each day until the day he purges his contempt, by turning over to the Chapter 7 Trustee the entire *res* of the Alleged Trust. The debtor is also **ORDERED** incarcerated until he turns over the Trust res, but, the Court will allow the debtor until September 14, 1999 to purge his contempt before implementing the incarceration.

C. Notwithstanding the monetary fine provided herein, in the event that the Debtor fails to have purged his contempt at or before 12:00 p.m. (Miami, Florida time) on Tuesday, September 14, 1999, this Court shall conduct a further status conference pursuant to 11 U.S.C. § 105(d) at 2:00 p.m. on Tuesday, September 14, 1999 (Miami, Florida time) in Courtroom 1410, Claude Pepper Federal Building, 51 S.W. First Avenue, Miami, Florida, 33130 to determine whether the Debtor has purged his contempt by complying with this Order and the Turn Over Order. The Debtor is ordered to be in attendance at the September 14, 1999 status conference.

D. If the Debtor shall not have purged his contempt by the time of the September 14, 1999 status conference, at the status conference the Debtor shall tender the sum of $130,000 by cashier's check or in the form of other immediately available funds, such sum constituting the amount of the monetary sanction imposed hereby that will then be due, and the Debtor shall be prepared to surrender himself to the

United States Marshal Service to be commended to the custody of the United States Bureau of Prisons to be held in custody until such time as the Debtor purges his contempt.

E. This Court notes that the Debtor did not comply with that provision of the August 26, 1999 Turn Over Order which required a full accounting of all transactions in respect of the Alleged Trust by 2:00 p.m. on September 2, 1999. At this time, the Court makes no findings or rulings on this issue. The Court reserves on the issue of the Debtor's contempt in respect of the accounting of the transactions of the Alleged Trust.

F. The Debtor and his representatives are hereby authorized to contact the trustee(s) of the Alleged Trust and the Trustee(s) advisors in order to facilitate the Debtor's compliance with the terms of this Order.

G. These provisions of this Order are effective as of the time that it was rendered from the bench on September 2, 1999 at approximately 3:30 p.m., notwithstanding any delay in the entry of this written Order.